713 So.2d 1152 (1998)
STATE of Louisiana
v.
Diego ZAPATA.
No. 97-KA-1230.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*1154 Martin E. Regan, Jr., New Orleans, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Appellate Counsel, Hans Sinha, Michael S. Futrell, Assistant District Attorneys, Trial Counsel, Gretna, for Plaintiff/Appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
WICKER, Judge.
Diego Zapata appeals his conviction of possession with intent to distribute heroin. We affirm.
Zapata's conviction arose out of a joint investigation by the federal Drug Enforcement Administration (D.E.A.) and the Guatemala National Police which began in Guatemala City, Guatemala. Zapata, a Colombian national, contends the whole situation resulting in his arrest was created by the D.E.A.
Based on information from the D.E.A. office in Guatemala, a D.E.A. special agent traveled to Guatemala City in September 1994 and observed a meeting between a confidential informant and Zapata, during which the confidential informant obtained a bag containing approximately 645 grams of heroin. With permission of the Guatemalan and U.S. governments, the D.E.A. agent conducted a "controlled delivery" of the heroin, transporting it to the New Orleans area.
Diego Zapata flew to New Orleans. On September 19, 1994 he was driven by a second confidential informant to a hotel to rendezvous with the first confidential informant, who was waiting at the hotel with the bag of heroin. Zapata obtained the bag and left the hotel in a car driven by the second confidential informant. However, the vehicle was halted by a Jefferson Parish sheriff's deputy for a traffic violation. When the deputy noticed a bag in the car and asked to search the vehicle, the driver consented to the search. The deputy discovered the bag containing the narcotics and Zapata was arrested.
*1155 On October 6, 1994, Zapata was indicted by the grand jury for possession with the intent to distribute heroin, a violation of La. R.S. 40:966(A). He entered a plea of not guilty. The trial court denied his motions to suppress evidence, to suppress confession, and to disclose the identity of the confidential informant. This Court denied his writ application regarding the motion to disclose the identity of the confidential informant, finding no reason to exercise our supervisory jurisdiction, and the supreme court denied writs on the ground defendant had adequate remedy by appeal. State v. Zapata, 97-447 (La. App. 5 Cir. 5/13/97), writ denied, 97-1270 (La.5/14/97), 693 So.2d 784.
On May 13, 1997, the trial court denied defendant's motion to continue the trial and for a stay order and his motion for production of the automobile in which he was arrested. The court also denied defendant's request for a new attorney and defense counsel's request to withdraw. On May 13 and 14, 1997, the defendant was tried before a twelve-person jury, which unanimously found him guilty as charged. The jurors were polled and the trial judge accepted the verdict as a judgment of the court.
On June 13, 1997, the trial judge denied the defendant's motion for a new trial. Defendant waived delays. After a brief sentencing hearing, the trial judge sentenced defendant to the mandatory statutory term of life imprisonment at hard labor without the benefit of probation or suspension of sentence. Defendant was also given credit for time served. On the same day, the defendant made an oral motion for appeal. His November 25, 1997 written motion for out-of-time appeal was granted on December 1, 1997.

FACTS
Agent Bruce Harrison of the Jefferson Parish Sheriff's Office Narcotics Division was qualified as an expert in the use, packaging, and value of narcotics. He told the jury that heroin is one of the most addictive drugs available and he identified State's Exhibit 2 as "balloons of heroin," containing approximately 645 grams. He stated that heroin packaged this way is intended to be cut with another substance and distributed. The 645 grams, when cut, would produce 60,000 to 80,000 individual dosage units, giving the whole package a street value ranging from $100,000 to $250,000. The parties stipulated that the substance contained in State Exhibit 2 would test positive as heroin.
Special Agent Stanley Kennedy of the Drug Enforcement Administration (D.E.A.) testified that in September 1994 he participated in the investigation that ultimately led to the arrest of the defendant, Diego Zapata. In early September of 1994 he received information from the D.E.A. office in Guatemala City which prompted him to travel to Guatemala with a confidential informant. While in Guatemala he observed the confidential informant (CI -1) meet with the defendant at a restaurant.
Later, when CI-1 was to meet defendant at a residence, agents searched CI-1 prior to the meeting. They found no drugs or weapons on him. After being searched CI-1 went to the residence at which he was to meet with the defendant. D.E.A. agents observing the exterior saw CI-1 enter empty-handed, but emerge carrying a bag. Agents inspected the bag and found it held 64 rubber "fingers" filled with a substance which field-tested for heroin.
Based upon that information, Agent Kennedy decided to execute a "controlled delivery" (an operation in which police receive narcotics from a suspect, transport it and, upon delivery, usually arrest the suspect). With permission of the applicable Guatemalan and the United States government agencies, an agent flew with the drugs to Miami and thence to New Orleans on September 18, 1994. In New Orleans D.E.A. agents met him at the airport, took the package directly to their office, and placed it in a safe.
CI-1 had given Zapata Agent Kennedy's pager number as a contact in the U.S. Kennedy and another agent brought CI-1 to the D.E.A. office to prepare him for next day's operation. While CI-1 was at the office being briefed, Kennedy's pager alerted and he traced the call, discovering it had originated at the Airport Hilton hotel in Kenner. They brought in another confidential informant(CI-2) *1156 to be a driver for Zapata. They also rented two rooms at the La Quinta Inn in Metairie, one room for the undercover transaction and one room for security purposes, containing a video monitoring system.
Agent Kennedy testified that on September 19, 1994 they had CI-1 contact Zapata and tell him he was sending someone over to pick him up. On that day Jefferson Parish Sheriff's Office deputies and additional D.E.A. agents were conducting surveillance outside the hotel. Kennedy and Agent Wende Juncker were observing the transaction room at La Quinta via the video monitor in the next room. Kennedy saw the defendant enter the room with CI-2, in which CI-1 was waiting. He observed the defendant converse with CI-1. The bag containing the heroin was on the bed. Zapata moved to the bed and emptied the bag onto it, then counted the "fingers" of heroin and replaced them in the bag. Kennedy said only Zapata handled the heroin while he was observing. Zapata then left the room with CI-2. He identified State Exhibit 2 as the bags containing heroine that they got in Guatemala and also as the bag of heroin which was in the hotel room.
According to Kennedy, he had arranged with JPSO deputies that when Zapata departed from the hotel in the car, they would execute a traffic stop. They elected not to burst into the hotel room to arrest him because they wanted to protect their confidential informants and also to protect hotel guests. He said the JPSO handled the remainder of the operation because D.E.A. wanted to maintain their operation in Guatemala and to protect the identities of their confidential informants.
Captain Kenneth Soutoullo of the Jefferson Parish Sheriff's Office Narcotics Division testified that on the date of this incident he was conducting surveillance of La Quinta Inn, Room 134, from the parking lot behind the hotel. He saw the defendant and CI-2 enter the room; neither party had anything in their hands upon entry. Three or four minutes later he saw the defendant and CI-2 exit the hotel room. The defendant was carrying a white plastic bag as he left the room. They returned to their car, with CI-2 driving and the defendant in the passenger seat. They left the parking lot of the hotel and headed west on Veterans Boulevard. At that point Captain Soutoullo instructed Lieutenant Thompson to stop the car.
Lieutenant William Thompson of the Jefferson Parish Sheriff's Office testified that on September 19, 1994 he was asked to make a vehicle stop for the narcotics division. He was stationed in a parking lot across from the La Quinta Inn. He observed the suspect vehicle cross the three eastbound lanes of Veterans Boulevard, cross two westbound lanes to the third lane, and head west on Veterans. He stated this constituted illegal lane usage, so he turned on his lights and siren and pulled the vehicle over. He got the driver's license and asked the driver to exit the vehicle. The driver got out of the car and gave Thompson consent to search. Thompson called for backup. When backup arrived the Lieutenant looked into the car, saw a bag on the floor behind the driver, looked into the bag, saw what appeared to be narcotics, and turned the bag over to the narcotics people.
Anthony Soto testified that in 1994 he was Commander of the Narcotics Division of the Jefferson Parish Sheriff's office. (At the time of trial he was employed as Deputy Director of the Gulf Coast High Intensity Drug Trafficking Area.) He speaks Spanish fluently. On September 19, 1994 he received a radio call requesting a translator for a traffic stop at Veterans Boulevard and I-10. He went to the scene, where Agent Wende Juncker asked him to interview a passenger in the vehicle. Soto approached him and advised the defendant, in Spanish, of his Miranda rights, and began questioning him regarding drugs found in the vehicle.
Soto testified the defendant denied knowledge of the drugs. He gave his name as William Serrano and produced Spanish-language identification bearing that name. He claimed to know the driver of the vehicle from negotiating the buying and selling of vehicles.
The officers relocated with the defendant to his room at the Airport Hilton Hotel on Airline Highway, where the defendant consented *1157 to a search of the room. Soto listened to the telephone answering system for the room, which revealed two messages in Spanish. One was from a man who identified himself as Hugo, who wanted to know the whereabouts of the room's resident. The other caller identified himself as Luis and stated he would have called earlier, but he didn't remember what name the room's resident was using. Soto said the search of the room was conducted by Agent Juncker, who actually collected the evidence.
Agent Wende Juncker of the Jefferson Parish Sheriff's Office Narcotics Division testified she was contacted by Stan Kennedy of the D.E.A. to assist with the operation. The Jefferson Parish Sheriff's Office was responsible for setting up the surveillance at the La Quinta Inn. They arranged for the "take-down" after the transaction to be done away from the hotel to protect the confidential informants as well as the hotel guests. She arranged with Lieutenant Thompson to be the take-down officer.
Juncker testified she was stationed in the surveillance room and observed the activities in the transaction room. The D.E.A. agent had left the bag of heroin with the CI in the transaction room. She observed the defendant and the other informant arrive. The defendant sat on the bed next to the heroin, while both the informants stood across the room from him. There was some conversation between the defendant and CI-1, but none that she observed with CI-2. The defendant dumped the heroin from the bag onto the bed and counted the latex packages of heroin. After additional conversation with CI-1, he picked up the bag and walked out of the hotel room with CI-2, who drove him. She identified State Exhibit 2 as the bag of heroin that was on the bed.
A few minutes later Lieutenant Thompson contacted her via radio and stated he had pulled over the vehicle in which they were travelling. She went to the location and saw the bag, which was on the back floorboard behind the driver's seat. She looked inside and identified it as the heroin that had just been taken from the hotel. She called for a drug-sniffing dog to be brought to the scene. After the dog and its handler arrived, the dog alerted on the bag. Juncker admitted the dog was used for show, to make the stop look spontaneous to the defendant. In addition, Juncker field-tested the substance positive for heroin. She took possession of the bag and, after returning to the Narcotics Office, processed it as evidence. She stated it weighed approximately 645 grams.
Agent Juncker also went with Commander Soto and to the defendant's room at the Airport Hilton. Their search located an "open return" airline ticket from New Orleans to Miami to Guatemala City in the name of William Serrano, which Juncker testified in her experience as a narcotics agent is a mode of travel utilized by drug traffickers. They found boarding passes from Guatemala to Miami and from Miami to New Orleans on September 18th; an immigration stamp in the name of William Serrano; a hotel receipt in that name from the New Orleans Airport Hilton, showing check-in on 9-18 and check-out on 9-19-94; and a Guatemalan passport with a photograph of defendant in the name of William Serrano Rosales, as well as a wallet with identification cards in that name.
The defendant presented no witnesses on his behalf. Based upon the foregoing evidence, the jury found the defendant guilty as charged.

ASSIGNMENT OF ERROR NO. 1
Defendant asserts the trial court erred in failing to order the disclosure of the identities of the confidential informants, CI-1 and CI-2. Specifically, defendant argues the trial court erred by failing to order the State to order the disclosure of the identity of CI-1 because CI-1 played a crucial role in the transaction forming the basis of his conviction.
As a general rule, an informant's identity is privileged information. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688. This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging persons to supply information to the police *1158 without fear of reprisal by the person to whom the information pertains.
Thus, the identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. State v. James, 396 So.2d 1281, 1284 (La.1981); State v. Fefie, 96-605 (La. App. 5 Cir. 3/25/97), 692 So.2d 1236. The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. State v. Davis, 411 So.2d 434, 436 (La.1982). The trial court is accorded great discretion in making such a determination. State v. James, supra.
The determination of whether a proper balance between protection of the flow of information and an accused's right to prepare his defense renders nondisclosure of the identity of the C.I. erroneous depends upon the particular circumstances of each case. Roviaro v. United States, 353 U.S. 53 at 62-64, 77 S.Ct. 623 at 628-629, 1 L.Ed.2d 639 (1957). The court must consider the crime charged, the possible significance of the informer's testimony and other relevant factors. Id.
Louisiana has adopted the Roviaro balancing test. The following guidelines determine when disclosure is necessary:
When an informant only supplies the information and does not participate in the transaction, disclosure is not required. * * * On the other hand, when the informant plays a crucial role in the transaction and the defense meets its burden of showing exceptional circumstances justifying disclosure, disclosure is required. Participation in the alleged criminal transaction is the key; if the informant does not participate, the defendant cannot compel disclosure.
State v. Becnel, 95-591 (La.App. 5 Cir. 1/30/96), 668 So.2d 1281, 1286.
When the State's case shows the informer participated in the crime, his identity should be disclosed to defendant. In such cases, the informer does more than furnish a tip that enables the police to make an arrest. While working with the police, he takes part in the illegal transaction itself. State v. Dotson, 260 La. 471, 256 So.2d 594, 606 (1971) (on rehearing), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
In its ruling on this issue, the trial court stated:
As to the CI's, I am not going to disclose either CI, (1) the defendant has not shown and literally whatever the case says, must show exceptional circumstances. Exceptional circumstances are not what these people might be facing in a Federal Hearing or even in a State Hearing for that matter. That may be an instance every time.
CI-1, there are some safety concerns so that outweighs. But even on CI-2, where there's not safety concerns ongoing, there's still safety concerns regarding this case.
I think the defendant has not met their burden of showing exceptional circumstances justifying disclosure. And so the balancing act weighs heavily on the side of the State in this case and I'm not going to allow those people to be disclosed either.
The defendant argues that exceptional circumstances existed in this case because Confidential Informant 1 played a "crucial role" in the transaction forming the basis of his conviction. However, the transaction was witnessed by several D.E.A. and Jefferson Parish narcotics agents. Further, the incidents in Guatemala were witnessed by Agent Kennedy.
In State v. Becnel, supra, this Court held that where the confidential informant was not the sole eyewitness to the transaction, disclosure of his identity was not warranted. Agent Kennedy testified during pre-trial motions that the disclosure of CI-1 could lead to the informant's death and result in danger to the safety of other D.E.A. agents. The defendant does not specify any concrete reasons why he needed to know the identity of the informant beyond the confidential informant's presence during the transaction.
In State v. Davis, 411 So.2d 434, 437 (La. 1982), the Louisiana Supreme Court held that the mere presence of a confidential informant during a transaction is not enough to *1159 warrant disclosure. The defendant argues that failure to disclose prevented him from the right to prepare a defense and to subject CI-1 to cross examination as to the particulars of each meeting with the defendant. The defendant does not, however, explain what he expects such cross examination would reveal.
In State v. Becnel, 668 So.2d at 1286, this Court found that the possibility that the testimony of a C.I. may help the defense contradict the allegations of a police officer was insufficient to warrant disclosure. The defendant has not met his burden of demonstrating exceptional circumstances pertaining to his defense that warrant disclosure of the identity of the confidential informant or justify interference with the great discretion accorded the trial court. See, State v. Davis, 411 So.2d at 437. Accordingly, we find no merit to this assignment.

ASSIGNMENT OF ERROR NO. 2
The defendant asserts the trial court erred in denying his motions to suppress the evidence. He contends the evidence should have been suppressed because the officer who made the traffic stop acted without reasonable suspicion.
Unlawful searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. La.Code Crim. P. Art. 162. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State bears the burden of proving one of these exceptions applies. State v. Tatum, 466 So.2d 29 (La.1985).
The question of whether evidence was seized in violation of the Fourth Amendment is one for the trial judge, whose factual determinations are entitled to great weight on appeal. State v. Ellis, 94-599 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, writs denied, 95-2095 (La.12/8/95), 664 So.2d 421, 95-1639 (La.1/5/96), 666 So.2d 300.
In the instant case, Lt. Thompson testified that he was asked to make a vehicle stop for narcotics, that he observed the vehicle which he knew to be the suspect vehicle cross five lanes of traffic, and that he stopped that vehicle. The defendant argues that the traffic stop was artifice. However, in State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, the Louisiana Supreme Court recently followed the United States Supreme Court and held that the fact that an officer was conducting a drug interdiction patrol when he pulled over a car had no bearing on the legality of an initial stop for improper lane use:
[T]he determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of circumstances known to the officer at the time of his challenged action. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Wilkens, 364 So.2d 934, 937 (La.1978).
699 So.2d at 880.
A traffic violation stop will not be "rendered invalid by the fact that it was a mere pretext for a narcotics search." United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Accordingly, Lt. Thompson's knowledge that he was stopping the car for a narcotics violation does not invalidate the investigatory stop for illegal lane usage.
One exception to the warrant requirement is the "automobile exception," which is based upon the existence of probable cause to search and exigent circumstances. State v. Tatum, supra. Probable cause to search exists when the total circumstances allow the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular location. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748. For constitutional purposes, there is no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant. Given probable cause to search, either course *1160 is reasonable under the Fourth Amendment and Louisiana Constitution. State v. Tatum, supra.
Exigent circumstances have been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. State v. Tatum, supra; State v. Pittman, supra.
Upon stopping the car, Lt. Thompson obtained consent to search the vehicle. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). Because the State relied on consent to justify a warrantless search, it had the burden of proving the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. These factual determinations are to be accorded great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Isaacs, 95-173 (La.App. 5 Cir. 6/28/95), 658 So.2d 29, writ denied, 666 So.2d 299 (1996).
A person who possesses common authority over the premises can validly consent to a search of those premises if the consent is freely and voluntarily given. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Wagster, 361 So.2d 849 (La.1978); State v. Johnson, 519 So.2d 212 (La.App. 5 Cir.), writ denied, 523 So.2d 1334 (La.1988).
In the instant case the driver, CI-2, exercised common authority over the automobile and gave consent to search. This consent was sufficient to permit search of the automobile. In addition the officer had probable cause to search based upon the results of the narcotics investigation. In fact, Agent Kennedy testified that he believed that probable cause to arrest the defendant existed at the hotel, but that the defendant was stopped in the automobile in order to protect other hotel guests. Finally, exigent circumstances existed in that the car was movable, the defendant was alerted and the contents of the bag could have been moved or destroyed before a warrant could have been obtained. Accordingly, this search fell into both the automobile and the consent exceptions to the warrant requirement, and therefore the trial court did not err in denying the defendant's motion to suppress the evidence.

ASSIGNMENT OF ERROR NO. 3
Defendant asserts the trial court's denial of his pro se motion to change counsel and his trial counsel's motion to withdraw impinged on his Sixth Amendment right to counsel.
The defendant requested a change of counsel on the day of trial, stating:
Please, my family has left Colombia to come here. I should like to change my lawyer, because I do not agree with what happened yesterday. And today, I tried to collaborate fully, too much collaboration. And now they're telling me I'm going to trial. For that reason I wish to change lawyers.
In response to the defendant's request, his trial attorney requested to withdraw from the case:
I have, uh, tried to counsel Mr. Zapata for 2½ years. And I received a very rude phone call from his brother this morning, calling me all kinds of names, because according to Mr. Zapata and his family, I have been doing absolutely nothing for him.
I doubt he is going to follow memy advice during the trial because it would appear that he just doesn't trust me. And therefore, I respectfully request that this Court allow me to withdraw from the representation of Mr. Zapata.
The trial court denied the defendant's request and the attorney's motion to withdraw, stating:

*1161 Alright. Let the record reflect that if he doesn't like what was done yesterday, his attorney has already taken appropriate steps to get another court to rule on that.
They have not yet ruled. So, everything that could be done, has been done in that regard. This matter has been pending for some 2½ years. For this Court to allow a defendant to request a new attorney at the final moments before trial begins, and let the record reflect I have ordered a jury in this matter, I just can't do that.
Every defendant in the world would be coming to me at the last minute just to get a delay in trial. That's what I believe this is, is a delaying tactic. His attorney has been in this case from virtually the beginning. He is certainly well familiar. If a new attorney came in at this point in time we would be dealing again, months in the future.
This case is plenty old enough; it needs to be trial and its going to be tried today. So, his request for new counsel is denied.
A defendant is guaranteed the right to assistance of counsel by both the federal and state constitutions. U.S. Const. Amend. VI; La. Const. of 1974, Art. I, § 13. Specifically, Article 1, Section 13 of the Louisiana Constitution provides, "At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The right of a defendant to counsel of his choice is codified at La.Code Crim. P. Art. 515:
Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.
The defendant's right to counsel of his choice "cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice." State v. Seiss, 428 So.2d 444, 447 (La.1983). Thus, a defendant "must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings." Id.
Absent a justifiable basis, "[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications." * * * Once the trial date has arrived, the question of withdrawal of counsel largely rests with the discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of abuse of discretion. * * *
428 So.2d at 447.
In Seiss, the court emphasized that the appointed counsel's inability to meet with the defendant to discuss the case was due to the uncooperativeness of the defendant rather than the unavailability of the counsel. Seiss, 428 So.2d at 448. The court noted that if the defendant was displeased from the start with his appointed counsel, he should have made earlier efforts to obtain counsel of his own choice. Because the defendant had ample time to obtain counsel of his own, the court reasoned that the motion to withdraw on the morning of trial could only be viewed as a dilatory tactic. Accordingly, the court concluded that the trial court did not abuse its discretion in denying the motion to withdraw.[1]
Here, trial counsel stated on the record that he had counseled the defendant for 2½ years. The record reflects that the defense attorney filed several pretrial motions on the defendant's behalf. If the defendant had been unhappy with his counsel, he had over two years in order to request a change. Accordingly, absent any extraneous circumstances, and following the Seiss and Bond cases, the trial court did not abuse its discretion *1162 in refusing to grant the defendant's or the attorney's requests for change of counsel on the day of trial.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial court erred in failing to grant the motion for mistrial after the State disclosed in its opening statement that documents from the Guatemalan operation had not been given to the defense in discovery. The defendant argues that he was entitled to a mistrial based upon alleged violations of discovery rules. Specifically, defense counsel noted that the district attorney, in his opening statement, said that Agent Kennedy met the defendant in Guatemala and that the heroin was field-tested in Guatemala. Defense counsel argued that this information was not previously available to him, and therefore the state committed discovery violations warranting a mistrial.
La.Code Crim. P. Art. 719 obligates the State, on defense motion, to produce any reports made in connection with the case that are within the possession or knowledge of the prosecutor and that are intended for use at trial. In the event of a discovery violation, the court has the discretion to permit the discovery of the undisclosed material, order a mistrial, grant a continuance, prohibit the introduction of the undisclosed material, or any other order, except dismissal, that is appropriate. La.Code Crim. P. Art. 729.5.
A conviction will not be reversed on the basis of a discovery violation, however, unless prejudice is shown by the trial court's adverse ruling on the motion for a mistrial. State v. Taylor, 597 So.2d 123, 125 (La.App. 5 Cir.1992), appeal after remand, 656 So.2d 722; State v. Arnaud, 412 So.2d 1013 (La. 1982). A mistrial is a drastic remedy and is within the discretion of the trial court, unless mandatory under La.Code Crim. P. Art. 770. It is warranted only if substantial prejudice results which would deprive the defendant of a fair trial.
The trial judge is permitted great discretion to fashion an appropriate remedy when prejudicial conduct is not within La.Code Crim. P. Art. 770. State v. Narcisse, 426 So.2d 118, 133, cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). A violation of discovery procedures is only reversible when a defendant is prejudiced as a result of the violation. Thus, the defendant was entitled to a mistrial under Article 775 only if he was prejudiced by a discovery violation. State v. London, 478 So.2d 1340, (La.App. 5 Cir.1985).
Although the defendant argues he was not aware the heroin was field-tested in Guatemala, he does not specify how this lack of disclosure was prejudicial. A discovery request regarding this information at most could have revealed that the substance involved was heroin, a fact to which the defense later stipulated. Absent a specific showing of prejudice, the trial court did not err by refusing to grant a mistrial.

ASSIGNMENT OF ERROR NO. 5
The defendant argues the jury erred in concluding there was constitutionally sufficient evidence to conviction him of possession with intent to distribute heroin. He contends the evidence at trial was insufficient to show that he was in possession of the heroin.
Due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 (1979). Under Jackson a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
The defendant in this case was charged with a violation of La. R.S. 40:966(A), which provides, in pertinent part, "Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally: * * * To *1163 produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I * * *." Heroin is classified as a Schedule I substance. La. R.S. 40:964(B).
The defendant argues that the evidence was insufficient to show that he possessed the heroin. He argues that the heroin never left the possession of the government or its agents and, therefore, was not in possession of the defendant. However, Agent Kennedy, Captain Soutoullo and Agent Junker testified that they saw the defendant in possession of the heroin.
The jury apparently found these witnesses credible. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. Accordingly, we find no merit to this assignment.

ASSIGNMENT OF ERROR NO. 6
Defendant asserts his trial counsel was ineffective for failing to adequately prepare and, more significantly, for failing to present an entrapment defense on behalf of the appellant. Because decisions about defenses to present may relate to counsel's choices for trial strategy, a ruling on it can best be made after an evidentiary hearing on application for post conviction relief.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La. 1987); State v. Brown, 384 So.2d 983 (La. 1980).
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] See our discussion of Seiss in State v. Mitchell, 95-552 (La.App. 5 Cir. 7/30/96), 680 So.2d 64, 68. See also, State v. Bond, 94-509 (La.App. 5th Cir. 1/31/95), 650 So.2d 354, 358-359, in which we concluded the defendant was not entitled to a continuance because his appointed attorney had filed several pretrial motions on his behalf and had stated, on the day of trial, that he was ready to proceed.