I,CANNELLA, Judge.
Defendant, Joseph J. Revader, appeals from his conviction of second degree murder and his sentence to life imprisonment at hard labor without beneát of parole, probation or suspension of sentence. For the reasons which follow, we affirm and remand.
On February 17, 1998, the Jefferson Parish Sheriffs Office received a telephone call from a woman in Florida, requesting that an officer check on her mother, Blanche White. The woman stated that she had not been hble to contact her mother for a couple of days and that her brother, Joseph Revader, who lived with their mother, had been making excuses about why their mother could not come to the phone. In response to the telephone call, Officer Joseph Ventola was dispatched to apartment # 301 at 2200 Severn Avenue, Metairie, where Blanche White resided. The officer knocked on the door. The defendant responded and allowed Officer Ventola inside. The officer inquired as to the whereabouts of |3Blanche White and was told by defendant that she was in Boutte, Louisiana, visiting relatives. Defendant seemed calm and Officer Ventola noted that there were two other boys in the apartment watching television. The officer and defendant went to the kitchen to telephone defendant’s sister, who had made the police contact. The defendant explained to his sister that their mother was in Boutte. Officer Ventola testified that he spoke with the woman and, although she stated that she had telephoned all of her mother’s relatives and friends in Boutte and could not locate her mother, she seemed satisfied with her brother’s explanation. Officer Ventola stated that, as a result of the conversation, he got the impression that there might have been a problem between Blanche White and her daughter and that she might have been in the apartment simply refusing to speak with her daughter. Therefore, he asked the defendant if he could look around the apartment. The defendant agreed and permitted the officer to go into the bedroom. The officer stated that he took a few steps into the bedroom, did not see anyone, did not see anything suspicious and then left the apartment.
After Officer Ventola left the apartment, the defendant became very nervous and confessed to his two friends, Chris Lopez and Julio Pena, that he had killed his mother. He showed the boys two knives and some bloody clothing that was in a bag in the hall closet. Defendant then brought the boys into the bedroom, moved some weight equipment and lifted up a throw rug, exposing bloody carpet. Defendant *877 then lifted the mattress and the boys saw a part of a human body. Thereafter, defendant asked the hoys to chive him across the river. The boys drove the defendant across the river by some railroad tracks, as defendant requested. The boys returned to Metairie, to Chris Lopez’s apartment, which was near defendant’s, and telephoned the Jefferson Parish Sheriffs Office 14to report the homicide.
Officer Jody Fruchtnicht responded to the call and interviewed the two boys. They told him that the defendant had told them that he had killed his mother and that they had seen the bloody clothing, knives and the body, hidden under the bed in the bedroom. Because they were afraid of being implicated, the boys told the officer that they had left the defendant at the apartment, instead of telling him that they had driven him across the river.
Officer Fruchtnicht then went to defendant’s apartment and knocked on the door. When no one answered, he tried the knob. The door was unlocked, so he went inside of the apartment. He looked around the apartment for defendant. When the officer entered the bedroom, he immediately noticed that the room was covered with blankets and sheets. He pulled back part of a sheet and noticed a red substance on the floor which he believed to be blood. The officer then lifted the mattress on the bed and observed a large, rolled up rug. Unrolling part of the rug, the officer smelled a rancid odor and observed a part of the victim’s body. Officer Fruchtnicht then secured the area and the apartment and notified his headquarters of what he had found.
The investigation was then turned over to the detective bureau. Officer Don English was next on the scene. After speaking with Officer Fruchtnicht, Officer English entered the apartment with crime scene technicians. The bedroom was photographed as found and at various stages of the investigation as thé body was discovered and unwrapped. The officer also searched the hall closet and found a Macy’s bag containing a white bloodstained bathrobe, two knives, an empty bottle of a cleaning agent and a bottle of white liquid paper. A bloodstained pair of men’s jockey shorts was found in the closet along with a pair |Bof white socks with what appeared to be liquid paper on them. After speaking to the two boys, Officer English obtained an arrest warrant for the defendant.
Two days later, on February 19, 1997, Officer Lauren Chaisson, employed by the Lafourche Parish Sheriffs Office, stopped the defendant as he was walking down P. Thibodeaux Lane in Thibodeaux, Louisiana. Officer Chaisson had been sent there in response to a suspicious person call and the defendant met the description given of the suspect. Defendant told the officer that he had no identification. The officer then conducted a pat down search and discovered a wallet and a large amount of cash. The wallet contained a credit card issued to Blanche White. Defendant told the officer that the credit card had been loaned to him. The officer checked with her dispatcher for any outstanding warrants. Next, Officer Mark Matranga arrived on the scene and Officer Chaisson told him what had transpired. The dispatcher informed the officers that nothing showed up on the defendant. The officers asked the defendant if his mother or a relative could come and pick him up. Defendant told Officer Matranga that his mother was dead. The officers decided further inquiry should be made concerning defendant. They handcuffed defendant to make further inquiry.
Officer Dennis Thornton of the Jefferson Parish Sheriffs Office received information that defendant had been picked up in Lafourche Parish. He and Officer English went to Lafourche Parish to arrest the defendant and bring him back to Jefferson Parish. Defendant waived his rights, after being informed of them and made two separate statements to the officers. In his first statement, he denied killing his mother, stating that he had nothing to do with *878 it and only learned of his mother’s death from seeing it reported on television. In his second statement, defendant admitted that he killed his mother by stabbing her and | ^hitting her with a dumbbell.
On April 3, 1997, the Jefferson Parish Grand Jury indicted the defendant on one count of second degree murder, in violation of La. R.S. 14:30.1. The defendant was 17 at the time the crime was committed. On April 4, 1997, at arraignment, the defendant pled not guilty.
On May 2, 1997, the defendant requested appointment of a sanity commission to determine whether he was competent to stand trial. On June 12, 1997, a sanity hearing was held and, at its conclusion, the trial judge found that the defendant was competent to stand trial.
On August 29, 1997, the defendant withdrew his former plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. A jury trial was held from May 11 through 14, 1998. The jury found the defendant guilty as charged. Written polling of the jury reflected that 10 of the 12 jurors concurred in the result. On May 29, 1998, the trial judge sentenced the defendant to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Following sentencing, the defendant filed a motion for an appeal, which the trial judge granted.
On appeal defendant assigns two errors.
ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error defendant argues that trial counsel was ineffective for failing to file a pretrial motion to suppress the evidence: a bloody bathrobe, two knives, a pair of bloodstained men’s jockey shorts, a bottle of cleaning agent and a bottle of liquid paper, all seized at the defendant’s apartment.
The State argues that, contrary to defendant’s assertions, trial counsel did 17file a motion to suppress the physical evidence, but abandoned it at the hearing on the motion. The State also argues that the defense has failed to show how trial counsel’s conduct was deficient or that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief where an evidentiary hearing may be conducted. State v. Cousan, 94,2503 (La.11/25/96), 684 So.2d 382; State v. Pendelton, 96,367 (La.App. 5th Cir. 5/28/97), 696 So.2d 144, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450. Where the issue is raised on appeal and the record discloses sufficient evidence to rule on the merits, the reviewing court may address its merits in the interest of judicial economy. Cousan, supra; Pendelton, supra. However, where the issue is linked to counsel’s choices for trial strategy, an evaluation of the claim of ineffectiveness can best be made after an evidentiary hearing. State v. Zapata, 97-1230 (La.App. 5th Cir. 5/27/98), 713 So.2d 1152, writ denied, 98-1766 (La.11/06/98), 727 So.2d 443.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show (1) that his counsel’s performance was deficient, that is, that counsel made errors so serious that counsel was not functioning as the “counsel guaranteed by the Sixth Amendment” and (2) that the deficient performance prejudiced the defense, that is, that the errors were so serious as to deprive petitioner of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 94-24381 s(La.10/16/95), 661 So.2d 1333.
The record in this case indicates, contrary to the defense assertions on appeal, that trial counsel did not fail to file a pretrial motion to suppress the physical *879 evidence. Such a motion was filed, combined with a motion to suppress the confession. However, at the hearing on the motion, the district attorney stated:
The state also understands that there are no other suppression issues that the defense wishes to raise, except for the statements that we spoke of in chambers before voir dire. Is that correct?
Whereupon defense counsel answered:
That’s correct, you Honor.
Thus, rather that failing to assert the motion to suppress the physical evidence, the record indicates that trial counsel withdrew the motion or waived it. We find that these actions fall into the category of trial strategy by defense counsel and, as such, under State v. Zapata, supra, are best considered by post-conviction application with an evidentiary hearing.
We are bolstered in this view by considering the record in its entirety. Defendant pled not guilty by reason of insanity. His defense was not that he did not commit the crime, but that he committed it because of mental infirmity due to mental illness and past aggressive acts committed on him by the victim. Based on this defense, trial counsel could have decided that the physical evidence in question, the bathrobe, two knives, boxer shorts, cleaning agent and liquid paper, strengthened this defense rather than hindered it.[1] Any prejudice suffered by defendant as a result of the admission of this evidence is not readily apparent.
1 (/Therefore, we find that the issue of trial counsel’s ineffectiveness, based on the record before us, is better left to post conviction review where a hearing can be conducted and a record for review prepared.
ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error defendant argues that the trial court erred in finding him competent to stand trial. More specifically, defendant argues that the trial court ruled on his competency under the greater standard of clear and convincing evidence, when the defendant was only required to prove his incompetence by a preponderance of the evidence.
Defendant argues that La.C.Cr.P. art. 648(A), which provides that the defendant’s incompetency must be proven by clear and convincing evidence, has been determined to be unconstitutional, relying on Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). Defendant further relies on the Louisiana Supreme Court decision in State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365, which held:
The Supreme Court’s decision in Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) makes clear that La.C.Cr.P. art. 648(A), as amended by 1990 La.Acts. No. 755, violates the Due Process Clause to the extent that it requires the defendant in a criminal prosecution to prove his incompetency to stand trial by clear and convincing evidence. Cooper has returned Louisiana to this Court’s jurisprudential rule that a criminal defendant need prove his incapacity to proceed only by a clear preponderance of the evidence. State v. Brooks, 541 So.2d 801, 805 (La.1989); State v. Machon, 410 So.2d 1065, 1067 (La.1982).
Thus, defendant argues that the trial courts use of La.C.Cr.P. art. 648(A) to judge his incompetency for trial was reversible error.
Defendant would be correct in his argument if it were borne out by the |10record. Use of the clear and convincing standard by the trial court in determining defendant incompetency to stand trial would be error. The problem with defendant’s argument in this case is that there is absolutely *880 no showing in the record that the trial court relied on the wrong standard in deciding whether defendant had met his burden of showing that he was incompetent to stand trial.
Following the hearing and submission by both sides of the matter for decision, the trial court stated:
Okay. Well, based on the testimony of the doctors, the court finds that Mr. Revader does have the capacity to understand the proceedings against him and has the ability to assist in his defense and meets all of the requisite criteria. Consequently, the court will set this matter for trial.
Therefore, we find no record evidence to support defendant’s claim herein that the trial court used the wrong standard in deciding whether he was competent to stand trial. The regularity of judicial proceedings is presumed unless rebutted by evidence. La. R.S. 15:432.
Moreover, in reviewing the record on appeal, we find ample evidence to support a finding that the defendant failed to show, by a preponderance of the evidence, that he was incompetent to stand trial.
Dr. Barbara McDermott, a clinical psychologist, was appointed by the trial court to conduct a mental status examination of defendant. Upon stipulation of both parties, Dr. McDermott was accepted by the trial court as an expert in the fields of psychology and forensic evaluations. In addition to a two and one-half hour interview with defendant, Dr. McDermott reviewed defendant’s prior medical history, psychiatric history, family history, substance abuse history and legal history. She testified that, in her opinion, defendant (1) was able to |T understand the nature of the charge against him, (2) understands the seriousness of that charge, (3) understands the defenses that are available to him, (4) is able to distinguish between a guilty plea and a not guilty plea and the consequences of each, (5) is aware of his legal rights, (6) understands the possible verdicts that could be rendered against him, (7) is able to recall and relate facts pertaining to the crime with which he is charged and his actions concerning the crime, (8) is able to assist counsel in locating and examining witnesses, (9) will be able to maintain a consistent defense with his attorney, (10) will be able to make simple decisions in response to well-explained alternatives, (11) is capable of testifying at his trial and (12) is capable of undergoing the stress of the trial without problem. She concluded that, in her opinion, defendant was able to understand the proceedings and to assist in his defense.
In cross examination it was brought out that defendant lacked some mental capacity because he had failed in school and was in special education classes. It was also brought out that defendant had received psychiatric treatment briefly in the past and had been prescribed antidepressants, although he was not taking them at the time of the interview or at the time of the homicide. It was also brought out that his mother physically abused him. The defense presented no witnesses. Thus, there was no rebuttal of Dr. McDermott’s findings.
Accordingly, we find no evidence that the trial judge applied the wrong standard in making his determination regarding defendant’s competency to stand trial and, further, we find that, based on the record before us, defendant has not proven his incompetency to stand trial by a preponderance of the evidence.
This assignment of error has no merit.
I,,ERROR PATENT
We have reviewed this case for errors patent and find that the trial court erred in failing to properly advise the defendant of the prescriptive period for post conviction relief as set out in La.C.Cr.P. art. 930.8.
In the present case the trial judge informed the defendant that he had “three years from today’s date in which to file any post conviction relief.” Defendant should have been advised that he had three years *881 following the finality of the judgment of conviction and sentence. La.C.Cr.P. art. 930.8; State v. Carter, 96-358 (La.App. 5th Cir. 11/26/96), 685 So.2d 346.
Therefore, we instruct the trial court to send appropriate written notice to defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that defendant received the notice. See State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.
Accordingly, for the reasons set out above, defendant’s conviction of second degree murder and his sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence are affirmed. The case is remanded to the district court to provide proof in the record of defendant’s receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.

. The facts that there was blood on defendant's boxer shorts indicating that he had stabbed himself in the groin and that he tried to hide the blood splatters on the beige wall with white liquid paper, could have supported the defense theory of the case.