866 So.2d 278 (2003)
STATE of Louisiana
v.
Saunders H. HILLS.
No. 03-KA-716.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 2003.
*280 Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant appeals his conviction for possession of cocaine, and his sentence as a fourth felony offender. For the following reasons, the defendant's conviction and sentence are affirmed.
On January 18, 2002, defendant, Saunders Hill, was charged in a bill of information with possession of cocaine, a violation of LSA-R.S. 40:967(C). Hill was arraigned on the charge on January 23, 2002 and entered a plea of not guilty.
Hill filed several pre-trial motions, including discovery motions and a Motion to Suppress Confession, Identification and Evidence. On February 22, 2002, the State provided open file discovery. On March 14, 2002, Hill filed a Motion for Disclosure of the Confidential Informant. On April 29, 2002, the court held a hearing on the motion to suppress and the motion for disclosure and denied both motions over Hill's objection.
On April 30, 2002, Hill was tried by a six-person jury and was found guilty as charged. Hill then notified the court of his intent to file a written appeal motion.
On May 10, 2002, Hill filed a Motion for New Trial, which was denied on the same day. Hill waived sentencing delays and was sentenced that day to serve five years of imprisonment at hard labor with credit for time served.
On October 7, 2002, the State filed a habitual offender bill alleging that Hill was a fourth felony offender, pursuant to LSA-R.S. 15:529.1. Hill denied the allegations of the habitual offender bill on November 8, 2002. On January 29, 2003, Hill filed a Motion For Production, seeking to secure copies of the transcripts of the predicate offenses used for enhancement in this case.
On March 25, 2003, a hearing was held on the habitual offender bill and Hill was adjudicated a fourth felony offender. Following the adjudication, Hill's original sentence was vacated and he was re-sentenced as a fourth felony offender to serve twenty years of imprisonment at hard labor without *281 benefit of probation or suspension of sentence.
On March 26, 2003, Hill filed a written motion for appeal, which was granted by the trial court.
On December 28, 2001, at approximately 8:00 p.m., Detective Russell Lloyd of the Gretna Police Department received a telephone call from a confidential informant who had provided reliable information since 1997. The informant advised Detective Lloyd of his location at the Econo Lodge at 930 Westbank Expressway, and further advised Lloyd that the he was in the company of a black male who wanted to sell cocaine. Without speaking to the seller, the officer agreed during the conversation with the informant to purchase 2.5 grams of cocaine. Detective Lloyd instructed the informant to remain at the scene with the seller so that the police would be able to identify the suspect.
After informing fellow officers, Officer Vincent and Sergeant Schmidt, of the call, all three officers drove to the Econo Lodge. Detective Lloyd and Officer Vincent were in an unmarked police unit and Sergeant Schmidt was in a marked police unit. The two police vehicles approached the scene from different directions. At the time of the arrival of the officers, at approximately 8:10 p.m., the informant's Grand Am vehicle was parked under the drive-thru with the informant inside. The defendant, later identified as Saunders Hill, was standing on the passenger side of the vehicle.
Hill, upon seeing Sergeant Schmidt's marked vehicle approach, ran off in the direction of Detective Lloyd and Officer Vincent, who had been walking toward the suspect at the time. Before Hill began to run, he discarded a white napkin behind the informant's vehicle.
Officer Vincent caught Hill and Detective Lloyd recovered the napkin. The napkin contained eight rocks of what field-tested positive for cocaine. According to the officers, they did not have an opportunity to investigate the tip they received prior to Hill's actions in discarding the cocaine. Hill was placed under arrest and transported to police headquarters and the rocks were turned over to the Crime Lab where further testing confirmed the substance to be cocaine.
In his first assignment of error, Hill argues that the trial judge erred in denying disclosure of the identity of the confidential informant and that this ruling deprived him of the right to present a defense.
The State replies the defendant did not show that the confidential informant played a crucial role in the transaction or arrest of the defendant.
As a general rule, an informant's identity is privileged information.[1] This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging persons to supply information to the police without fear of reprisal by the person to whom the information pertains.[2] The privilege is not absolute. The courts use a balancing test for determining when the confidential informant's name must be revealed to the defense. Under the Roviaro test, which Louisiana has adopted, the public interest in protecting the flow of information must be balanced against the *282 individual's right to prepare his or her defense.[3] When an informant only supplies the information and does not participate in the transaction, disclosure of his identity is not required.[4] However, when the informant "plays a crucial role in the transaction" and his testimony is necessary to insure a fair trial, disclosure of identity should be ordered.[5] In such cases, the informer does more than furnish a tip that enables the police to make an arrest, rather, while working with the police, he takes part in the illegal transaction itself.[6] As noted in Becnel:[7] "Participation in the alleged criminal transaction is the key, if the informant does not participate, the defendant cannot compel disclosure." The mere presence of the informant at the scene, without more, is not sufficient to warrant disclosure of the informant's identity.[8]
The burden is on the defendant to show exceptional circumstances warranting the disclosure of the identity of the confidential informant.[9] The determination regarding disclosure will depend upon the particular circumstances of each case.[10] In making such determinations, the trial court is afforded great discretion.[11]
The record reflects that Hill filed a Motion for Disclosure, seeking the identity and criminal record of the confidential informant. At a hearing held March 21, 2002, the State indicated the confidential informant did not participate in the drug transaction. The Court stated that, on that basis, the disclosure would not be ordered. Thereafter, Hill requested a hearing on the issue of disclosure. On April 29, 2002, the court held a hearing on the motion for disclosure and the motion to suppress evidence. At the hearing on the motions, Detective Russell Lloyd was called to testify.
Detective Lloyd testified that he was the officer who arrested Hill on February 28, 2001. The officer stated that he had received information from a confidential informant that the informant was located on the Westbank Expressway with a black male subject who was looking to sell crack cocaine. According to the officer, he instructed the confidential informant to stay with the subject until the officer arrived at the scene. Detective Lloyd testified that the confidential informant had given hundreds of leads in the past that led to arrests. When Detective Lloyd and Officer Vincent arrived at the scene, they did *283 so about the same time that Sergeant Schmidt was driving up in a marked unit. Hill saw the marked unit and he fled, while throwing down a white napkin containing crack cocaine. Officer Vincent stopped Hill and the witness retrieved the contraband. Detective Lloyd saw the confidential informant seated in his own vehicle. Prior to fleeing, Hill had been standing near the car door, talking to the confidential informant.
Following the interrogation of Detective Lloyd, the trial judge denied the motion for disclosure and the motion to suppress.
At trial, Detective Lloyd gave essentially the same testimony. The officer also testified that, since he did not know the black male subject, the officer instructed the confidential informant to stay near the subject so that the subject could be identified upon the arrival of the police. Detective Lloyd indicated that, when he heard from the informant about the sale, the officer did not speak to the seller. The confidential informant indicated the suspect wanted to sell 2.5 grams of crack cocaine. The confidential informant did not leave his vehicle the entire time and was free to go after the arrival of the police. When the officer was asked, on cross-examination, if the informant was going to buy the narcotics, he replied, "Absolutely not."
Following the trial, Hill filed a Motion for New Trial wherein he alleged the trial judge erred in refusing to disclose the confidential informant's identity.
On appeal, in alleging that the confidential informant participated in the transaction, thus warranting disclosure of his identity, Hill points to the following testimony by Detective Lloyd during cross-examination:
[Defense]
That police report says that he was arrested after he agreed to meet an undercover officer to sell 2.5 grams of crack cocaine. Explain that to me?
[Detective Lloyd]
Okay. The cooperating individual called me, I'm on the phone with the cooperating individual, the cooperating individual is with Mr. Hills. I am acting as an undercover officer, because the cooperating individual, in the presence of Mr. Hills, cannot talk to me as if I'm a police officer, because then Mr. Hills would not stay on the scene if he knew my informant was talking to a policeman.
As evident from the record, the confidential informant's involvement, in this case, was to provide the tip to Detective Lloyd and to remain at the scene until the officers arrived. The tip was supplied in a manner that would insure the confidential informant's safety and the integrity of the operation. The informant remained at the scene only to facilitate the identification of the defendant, and had no other involvement. Moreover, the record clearly indicates that the informant was not present to buy the narcotics.
As such, the record indicates the informant did not play a "crucial role in the transaction."[12] Additionally, Hill has failed to meet his burden of establishing exceptional circumstances that would warrant disclosure of the identity of the confidential informant in this case.[13] Accordingly, we find that the trial judge correctly denied the motion for disclosure and the motion for new trial.
In his second assignment of error, Hill contends that he was denied his constitutional *284 right of confrontation when he was not permitted to cross-examine Detective Lloyd concerning certain alleged similarity between the report in this case and the report in a second, unrelated case that occurred the same day. The State, however, replies that the evidence was irrelevant and thus inadmissible.
The right to confront witnesses is a fundamental right guaranteed by the federal and state constitutions.[14] Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."[15] Cross-examination is the principal means by which believability and truthfulness of testimony are tested.[16] Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness.[17]
Generally, to attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.[18]
A trial court may impose reasonable limits on defense counsel's inquiry challenging the credibility of a prosecution witness to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant." (Emphasis added).[19] As noted by this Court, in State v. Jones:[20]
However, the right to confrontation is not so unlimited as to require that a defendant be allowed, on cross-examination of a State witness, to make any and all inquiries of whatever character. The inquiry must be relevant.
The test of whether there has been a violation of a defendant's Right of Confrontation was discussed in State v. Robinson:[21]
Although the case law does not provide a consistent test for determining when a Sixth Amendment violation occurs, the Supreme Court has held that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness and thereby expose facts from which the trier of fact could appropriately draw inferences relating to the reliability of the witness.... See Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); Olden v. Kentucky 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988).
(Emphasis added; footnote omitted).
Additionally, the Louisiana Supreme Court in Robinson added that it has recognized *285 that the existence of a Sixth Amendment violation should not depend upon the category of impeachment, but upon whether the defendant was prevented from using any impeachment that would have been potentially effective in his case.[22]
During the trial, Detective Lloyd, who had previously testified during the State's case in chief, was recalled by Hill. The officer was asked if he was at the Detective Bureau at 8 o'clock at night when he received the informant's call in the present case, and he responded that the call was received at approximately 8 o'clock. Detective Lloyd was asked if he could have been at the Jefferson Parish Correctional Center booking someone else at that time, and he said no. The officer was asked if, on the night of this arrest, he had also arrested Gary Massey, some two hours before, and he replied that he had. The officer also indicated that a marked police unit transported Massey to police headquarters. The State objected to the line of questions on the basis of relevancy, and the court sustained the objection. At a bench conference that followed, Hill explained the reports in the present case and the Massey case were almost identical in that they reflected the use of the same confidential informant in the same location and both allegedly involved a "throw-down" of drugs. According to Hill, he intended to attack the officer's credibility by using Massey to show that Massey's incident was not as was reflected in the police report. The trial judge denied Hill's request to pursue this line of questioning. Thereafter, Hill asked to proffer the evidence and the court allowed the proffer.
During the proffer, Detective Lloyd identified the Massey report as one he had written. The officer indicated that, on December 28, 2001, he was contacted by a confidential informant at approximately 6:30 p.m., and advised that the informant was at the Econo Lodge on the Westbank Expressway with a black male who wanted to sell crack cocaine for $250. The officer testified that the confidential informant was waiting outside for the officer. Detective Lloyd and Officer Vincent went to the location and observed the informant speaking with the black male subject, later identified as Gary Massey. At 6:55 p.m. as Detective Lloyd exited his vehicle, Massey turned and discarded a clear plastic bag unto the ground. The informant was the same person as in the current case. The officer indicated that the transactions were basically the same as the Hill case, except for the manner in which the drugs were discarded. The officer also acknowledged that he had returned to the Bureau, and was there at 8:00 p.m., when the second call was received from the same informant, regarding the Hill case. The officer indicated that he did not know if the charges against Massey were accepted.
Thereafter, Hill called Massey to testify and this witness invoked his right against self-incrimination and refused to testify.
Ultimately, relevancy and the admissibility of evidence is within the sound discretion of the trial court and its ruling will not be disturbed on appeal, absent a clear abuse of discretion.[23]
In this case the trial judge found the evidence inadmissible and sustained the State's objection on the basis of relevancy. Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable, or less probable, than it would be without the evidence.[24] *286 The trial judge in deciding the issue of relevancy must determine whether the evidence bears a "rational" connection to the fact in issue in the case.[25] Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible.[26] Although relevant, evidence may be excluded if its probative value is outweighed by its prejudicial impact, will mislead the jury, or confuse the issues.[27]
After reviewing the record, we find that the events that transpired in the unrelated Massey case were neither relevant to, nor probative of, Officer Lloyd's actions in the current case. As such, the evidence was properly excluded by the trial court judge. Additionally, we find that the trial judge also properly denied the motion for new trial grounded on this basis.
Hill next contends that the twenty-year sentence at hard labor, imposed pursuant to his adjudicated as a fourth felony offender, is excessive. The State replies that the sentence is within statutory limits and defendant made no showing that would warrant a downward departure.
The record indicates that Hill merely lodged an objection at the time of sentencing without specifying a basis. Additionally, Hill did not make an oral motion for reconsideration of sentence, nor did he file a written motion for reconsideration of sentence.[28]
The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness.[29] Accordingly, we review defendant's sentence only for constitutional excessiveness.
At the time of the current offense, the sentence prescribed for fourth-felony offenders was set forth in LSA-R.S. 15:529.1(A)(1)(c)(i)(ii),[30] in pertinent part, as follows:
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for a determinate term not less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than natural life, or
(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15: 540, et seq. when the victim is under the age of eighteen at the time of the commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten year or more or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In this case, Hill's fourth felony was for possession of cocaine, which carries a sentence *287 of up to five years of imprisonment and a discretionary fine of up to $5,000.[31] The offenses used for enhancement were convictions for: (1) simple burglary of an inhabited dwelling (LSA-R.S.14:62.2); (2) possession of cocaine (LSA-R.S.40:967(C)); and (3) armed robbery (LSA-R.S.14:64). Therefore, LSA-R.S. 15:529.1(A)(1)(c)(i), as amended by 2001 La. Acts 403, provided a sentencing range for this defendant from twenty years of imprisonment to life imprisonment. The trial judge imposed a sentence of twenty years and at the time of sentencing, he stated the following:
THE COURT:
Well, I don't think Dorothy applies in this case, but in any case, my reading of 529.1, the only time the sentence becomes a mandatory life, without benefit of probation, parole, or suspension of sentence, is if the fourth offensethe fourth offense and two of the prior felonies are crimes of violence, or sex offense, and certain conditions. I don't think that section, 529.1 C(2) applies in this case, but it still leaves him with the situation of the fourth to be sentenced for not less than twenty, twenty years, and no more than a natural life.
Hill received the mandatory minimum sentence under the Habitual Offender Law, pursuant to LSA-R.S. 15:529.1(A)(c)(i).[32] Despite having received the mandatory minimum sentence, Hill's sentence may be reviewed for constitutional excessiveness.[33]
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A mandatory sentence may be excessive if the sentence "makes no measurable contribution to acceptable goals of punishment or ... amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime."[34]
The mandatory minimum sentences provided for under the Habitual Offender Statute are presumed to be constitutional.[35] In order to rebut the presumption that the mandatory minimum sentence is constitutional, defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.[36] Downward departures from the minimum sentence under the Habitual Offender Statute should occur only in rare situations.[37] A downward departure from the minimum sentence mandated by the Habitual Offender Statute is warranted if the trial court determines that the minimum sentence mandated makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than a purposeful imposition *288 of pain and suffering and is grossly out of proportion to the severity of the offense.[38] If a downward departure is warranted, the trial judge shall sentence the defendant to the longest sentence, which is not constitutionally excessive.[39]
In this case, although Hill alleges that the twenty-year sentence as a fourth felony offender for mere possession of cocaine is excessive, he made no showing in the district court for a downward departure.[40] Additionally, his sentence reflects two benefits. He was given the minimum sentence allowed for a fourth felony offender under LSA-R.S. 15:529.1(A)(1)(c)(i). Because the commission of this offense occurred in December 2001, he received the ameliorative effects of 2001 La Acts No. 403, which amended the Habitual Offender Statute in June 2001. Under the pre-amendment version of LSA-R.S. 15:529.1(A)(1)(c), a defendant with an underlying crime of violence (armed robbery) would have been subject to mandatory life imprisonment without benefit of parole, probation, or suspension of sentence.
Furthermore, Hill's argument that a twenty-year sentence for possession is excessive, ignores the exacting toll of such recidivist activity.
In State v. Johnson,[41] the defendant was convicted of possession of cocaine and possession of marijuana. As a fourth felony offender, with three prior felonies for theft, the trial court made a downward departure from the mandatory minimum sentence of twenty years. The Louisiana Supreme Court vacated the sentence. The supreme court refuted the defendant's argument that his drug violation for simple possession did not warrant the mandatory minimum sentence. The supreme court noted the following:
Even so, drug possession/use clearly does not effect only the user, but society in general through higher medical costs, higher unemployment rates, loss of tax revenue from those unemployed, etc. Other losses to society include theft or theft related crimes committed to support the drug habit. Here, this defendant, a cocaine user, had previously been convicted of three prior felonies, all theft or theft related (illegal possession of stolen things and theft).[42]
In this case, as in Johnson, Hill's prior offenses were drug and theft-related offenses. As such, his recidivist behavior was the type of behavior contemplated by the legislature in its enactment of harsher penalties for repeat felony offenders, particularly in cases involving drug and/or violence. Accordingly, we find that this assignment is without merit.
Hill has further assigned as error are all errors patent. The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[43] and State v. Weiland.[44] The review reveals no errors patent in this case.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Broadway, 96-2659, p. 22 (La.10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), citing State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983).
[2] Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).
[3] Roviaro v. United States, 353 U.S. at 62, 77 S.Ct. 623; State v. Broadway, 753 So.2d at 815; State v. Zapata, 97-1230, p. 2 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443; State v. Biglane, 99-111, p. 2 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 634.
[4] State v. Zapata, 713 So.2d at 1158, citing State v. Becnel, 95-591, p. 5 (La.App. 5 Cir. 1/30/96), 668 So.2d 1281, 1285 (quoting Roviaro, 353 U.S. at 62, 77 S.Ct. 623).
[5] State v. Zapata, 713 So.2d at 1158, citing State v. Becnel, 668 So.2d at 1285 (quoting Roviaro, 353 U.S. at 62, 77 S.Ct. 623). See also, State v. Broadway, 753 So.2d at 815.
[6] State v. Zapata, 713 So.2d at 1158; State v. Becnel, 668 So.2d at 1286.
[7] at 1286, quoting Roviaro, 353 U.S. at 62, 77 S.Ct. 623:
[8] State v. Zapata, 713 So.2d at 1158-1159, citing State v. Davis, 411 So.2d 434, 437 (La. 1982).
[9] State v. Davis, supra; State v. Zapata, 713 So.2d at 1158; State v. Biglane, 738 So.2d at 634; State v. Becnel, 668 So.2d at 1285.
[10] Roviaro v. United States, 353 U.S. at 62-64, 77 S.Ct. 623; State v. Zapata, 713 So.2d at 1158.
[11] State v. Zapata, supra; State v. Biglane, 738 So.2d at 634.
[12] State v. Zapata, supra, citing State v. Becnel, supra.
[13] State v. Zapata, supra; State v. Biglane, supra.
[14] U.S. Const. amends. VI and XIV; La. Const. art. I, § 17 (1974).
[15] State v. Robinson, 01-0273, p. 2 (La.5/17/02), 817 So.2d 1131, 1135.
[16] State v. Robinson, supra.
[17] State v. Jones, 02-908, pp. 10-11 (La.App. 5 Cir. 2/25/03), 841 So.2d 965, 976, writ denied, 03-0895 (La.9/26/03), 854 So.2d 345
[18] LSA-C.E. art. 607(C)
[19] State v. Robinson, 817 So.2d at 1135, quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435 89 L.Ed.2d 674 (1986).
[20] 841 So.2d at 976
[21] 817 So.2d at 1136:
[22] State v. Robinson, 817 So.2d at 1136, n. 4.
[23] State v. Mosby, 595 So.2d 1135, 1139 (La. 1992).
[24] LSA-C.E. art. 401;
[25] State v. Williams, 341 So.2d 370, 374 (La. 1976);
[26] LSA-C.E. art. 402.
[27] LSA-C.E. art. 403;
[28] LSA-C.Cr.P. art. 881.1.
[29] State v. Hester, 99-426, p. 2 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
[30] This provision of the Habitual Offended Statute was amended, effective June 15, 2001, by 2001 La. Acts, No. 403.
[31] LSA-R.S. 40:967(C)(2).
[32] Defendant's offense occurred on December 28, 2001; hence, he was subject to the amendment of LSA-R.S. 15:529.1 by 2001 La. Acts No. 403.
[33] State v. Armstrong, 99-925 (La.App. 5 Cir. 2/16/00), 756 So.2d 533, 538, writ denied, 00-2419 (La.6/1/01), 793 So.2d 182, cert. denied, 534 U.S. 1058, 122 S.Ct. 651, 151 L.Ed.2d 568 (2001).
[34] State v. Armstrong, 756 So.2d at 537.
[35] LSA-R.S. 15:529.1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Johnson, 709 So.2d at 676.
[36] State v. Johnson, supra; State v. Dorthey, supra.
[37] State v. Johnson, supra.
[38] State v. Washington, 00-301, p. 11 (La.App. 5 Cir. 9/26/00), 769 So.2d 1235, 1241, writs denied, 00-2971 and 00-3041 (La.9/28/01), 798 So.2d 106 and 108.
[39] State v. Johnson, 709 So.2d at 677.
[40] State v. Johnson, supra; State v. Dorthey, supra.
[41] 709 So.2d at 672
[42] Johnson at 678
[43] 312 So.2d 337 (La.1975).
[44] 556 So.2d 175 (La.App. 5 Cir.1990).