MARC E. JOHNSON, Judge.
12Pefendant, Jason M. Kiger, appeals his conviction of aggravated rape in violation of La. R.S. 14:42 and his sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence from the 24th Judicial District Court, Division “D”. For the following reasons, we affirm Defendant’s conviction and sentence and remand the matter to the trial court with instructions.
FACTS AND PROCEDURAL HISTORY
On October 13, 2011, the Jefferson Parish Grand Jury returned a true bill of information charging Defendant with one count of aggravated rape, a violation of La. R.S. 14:42. Defendant was arraigned on October 14, 2011, and pleaded not guilty. Defendant filed various omnibus motions, including a Motion to Suppress Statement, which was denied by the trial court on August 16, 2012.[1] Defendant’s trial commenced on October 23, 2012.
liiDuring trial, the victim, J.L.,[2] testified that she grew up with Defendant in Mar-rero and had a “horrible” relationship with him when she was very young. When J.L. was eight years old, Defendant began to touch her vagina and make her touch his penis, and he would also fondle her breasts. These activities took place in Defendant’s bedroom on occasions when her parents were out of town. Defendant told J.L. not to say anything because if her parents found out they would get into trouble, and “everybody would go to jail.” Defendant watched her and her brother when her parents were not in the house.
J.L. recounted how Defendant progressed from fondling her to forcing her to perform oral sex upon him until he ejaculated. Defendant forced J.L. to perform oral sex upon him for approximately one year.[3] When J.L. asked Defendant why *554 he was doing this, Defendant replied that “it’s normal.” J.L. did not tell anyone about what was being done to her by Defendant.
After approximately one year, Defendant’s abuse of J.L. further escalated into sexual intercourse. J.L. testified that Defendant made her tell her parents that she was afraid to sleep in her own room; subsequently, she slept in Defendant’s bed, where the first rape occurred. She said that it hurt and that she had never previously had sexual intercourse. Defendant continued to have sexual intercourse with J.L. from the time she was eight until she was 12 years old and in the seventh grade. During this time frame, she never told anyone about the sexual abuse.
As she got older, J.L. attempted to resist Defendant. On one occasion, she locked herself in her bedroom, and Defendant punched a hole through the door while attempting to get into the room. Defendant told J.L.’s parents that the hole |4in the door was created when he fell and hit his head. Defendant changed his residence not too long after J.L. turned 12. Defendant is approximately eight years older than J.L.
Many years later, J.L. first revealed what Defendant had done to her to a male relative, J.K. While at a family event, J.K. confided in J.L. that he had been molested by Defendant as a child. J.L. then told J.K. that she had been sexually abused by him as well. J.L. and J.K. agreed to share information with their respective spouses. For two to three years after their initial conversation, J.L. and J.K. were unsure about whether they should involve the police.
Near the end of May 2011, J.L. had a conversation with Defendant’s sister-in-law, K.M., wherein K.M. disclosed that she was uncomfortable that Defendant took showers with her four-year-old niece.[4] J.L. immediately left to call J.K. to let him know that she was going to tell her parents about what Defendant had done to them. After speaking with her parents and Defendant’s wife, J.L. went to a police station on the West Bank of Jefferson Parish to file a complaint. She was later contacted by Detective Fernandez and gave an interview regarding Defendant.
On cross-examination, J.L. stated that Detective Fernandez’s report would have been inaccurate if it said that J.K. did not know about the abuse of J.L. until a few days prior to when the report was made. J.L. told Detective Fernandez that that the incidents occurred from the time that she was eight to eleven years old, and Defendant was 16 to 19 years old. She told Detective Fernandez that Defendant would make her hurry and clean up upon “completion of an activity.” J.L.’s grandmother did not live with her family until she was in high school, but ^occasionally her grandmother was in the home when Defendant sexually abused her. J.L. testified that it hurt the first time that Defendant fully penetrated her vaginally, and she cried a lot. After Defendant had sex with her, he would make her clean herself in a shower attached to the bedroom. Defendant forced her to remove her clothing while she was in his room; thus, she was not aware that any of her clothes had ever become stained with either blood or semen.
After becoming an adult and having children, J.L. allowed Defendant to pick up *555 her minor children from school, but only if he was accompanied by his wife. At one point in time, J.L., her husband, Defendant and his wife shared residence of a home that had been subdivided. J.L. saw and spoke with Defendant at various family gatherings over the years.
On redirect examination, J.L. testified that Defendant used a condom when he vaginally penetrated her. With respect to the times that Defendant interacted with J.L.’s own children, J.L. stated that she taught her children the difference between a “good touch” and a “bad touch,” as well as how to protect themselves from abuse.
The second witness to take the stand was J.K. J.K. testified that Defendant is approximately 5½ years older than he is. On September 26, 2008, J.K. was celebrating his upcoming marriage and had completed a church-sponsored marriage preparation class for couples. Part of the class required participants to share their “deepest, darkest secret” with the woman they were going to marry. That day, J.K. told his fiancée that Defendant had molested him when he was between the ages of five and eight years old. Later that night, J.K. told J.L. what Defendant had done to him. In turn, J.L. told J.K. what Defendant had done to her, though not in great detail at that time.
1 fiJ.K. testified that the first time Defendant abused him was between the ages of five and eight. Defendant had a pop-up tent set up in his room, and had obtained pornographic magazines. Defendant invited J.K. into the tent and showed him the pornographic materials. As J.K. became aroused, Defendant performed oral sex upon him while masturbating. J.K. stopped Defendant from continuing the act. J.K. never performed oral sex upon Defendant, even though he was asked to do so. J.K. testified that there were two incidents he could recall when this type of behavior occurred. J.K. attempted to tell his mother about the incidents but became afraid. He also told his father about the incidents. J.K. was not aware of any repercussions against Defendant other than he had to get rid of the pornographic magazines. After J.K. and J.L. exchanged information about their abuse at the hands of Defendant, the only plan was to inform their parents, not call the police.
On cross-examination, J.K. testified that Defendant was roughly between 11 to 14 years old when Defendant performed oral sex on him. Approximately four to five years had passed between the time of his conversation with J.L. about the abuse by Defendant and the time that he spoke to police. After high school, J.K. and Defendant went on several trips together to see concerts and events in Northern Alabama and the Mississippi Gulf Coast. J.K. also lived with Defendant and another roommate for a few weeks in Houston, Texas, after Hurricane Katrina. At the time of those trips, J.K. and Defendant were roughly the same size; so, J.K. was no longer afraid of Defendant.
H.K. testified that he is the father of J.K. and J.L. H.K. recounted that there was an incident in seventh grade when J.L.’s school called to inform him that J.L. had told a teacher that she wanted to commit suicide. J.L. was never sent to a psychiatrist outside of school. H.K. recalled the time when J.K. told him that 17Pefendant had asked J.K. to do something sexually inappropriate. H.K. said he confronted Defendant about the accusation then spoke to J.K., but “things seemed to be okay.” H.K. stated that there was an incident when Defendant punched a hole in a door. J.L. was living in the room at that time. H.K. did not recall hearing anything inappropriate going on in the house.
Detective Randall Fernandez of the Jefferson Parish Sheriffs Office testified that *556 he formerly was assigned to the Personal Violence Section, which investigates sex crimes. He was placed in charge of the investigation of the instant case in June of 2011 after the victim, J.L., filed the initial report that she had been the victim of sexual abuse by Defendant.
Detective Fernandez interviewed J.L., who advised him that she had been fondled, forced to perform oral sex, and vaginally penetrated by Defendant from the time that she was eight and one-half years old until she was 12 years old. He also interviewed J.K., who “confirmed certain things involving the case.” Finally, after interviewing the parents of J.L. and J.K., Detective Fernandez authored an arrest warrant for the crime of aggravated rape and personally arrested Defendant. Defendant was taken to the Investigations Bureau, where he was advised of his rights in writing and then interviewed. At that time, Defendant gave a partial confession admitting to inappropriately touching J.L.
Prior to his statement, Defendant initialed the Jefferson Parish Sheriffs Office Rights of Arrestee or Suspect’s Form after being advised of his rights. A microcas-sette of Defendant’s first statement was entered into evidence by the State. Detective Fernandez testified that Defendant gave a second statement where he admitted to skin to skin contact with J.L. and fondling her vaginal area, rather than over her clothes, as he had stated in his first confession. The second statement of Defendant was also entered into evidence by the State.
| ^Defendant testified on his own behalf. He stated that he was threatened by police that if he did not cooperate with the investigation, he would never see his wife and daughter again. He also denied raping J.L. Defendant said that on many occasions, he would pick J.L.’s children up from school unsupervised.
Defendant worked for J.L.’s grandfather’s business during high school and spent three weekends a month there during the school year. During the summer months, he worked there almost every weekend. If J.L.’s parents were not at home, J.L.’s grandmother was there to watch the house.
Defendant testified that he did not know why J.L. and J.K accused him of raping and molesting them. Defendant said that he lied in his statements to police when he admitted to sexually abusing J.L.
Next, K.K., Defendant’s wife, was called as a State’s witness. She testified that she had received a letter from Defendant dated July 4, 2011. The letter was introduced into evidence by the State. The letter read, in part, “I want to let you know that whatever they charge me with, I’m going to accept it and do my time. I cannot apologize enough that I’m not there for you and [our child].”
At the conclusion of the presentation of evidence, the 12-person jury found Defendant guilty as charged. Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This timely appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Defendant alleges: 1) the trial court erred in permitting the State to introduce evidence of an unadjudicated crime allegedly committed when he was between 11 to 14 years old as evidence of a lustful disposition towards children, and 2) the sentence imposed by the trial court unconstitutionally deprives him of a meaningful opportunity for parole.
|c,LAW AND ANALYSIS

Evidence of Lustful Disposition towards Children

Defendant alleges that the trial court erred in allowing the testimony of *557 J.K, who recounted that he had been molested by Defendant between the ages of five and eight. Defendant asserts four factors that weighed against the introduction of J.K.’s claims of prior acts of sexual misconduct. In summary, the alleged factors are: 1) J.K.’s reliability; 2) Defendant’s age at the time the alleged sexual abuse took place; 3) the dissimilarity of the charged offense to the alleged prior offense; and 4) J.K’s testimony is inherently unfairly prejudicial and has a strong propensity to lure the fact-finder into declaring guilt on a ground different from proof specific to the charge.
Conversely, the State argues that the trial court properly allowed the testimony in under La. C.E. 412.2. because the probative value of J.K’s testimony outweighed any prejudicial effect.
Prior to trial, the State filed a Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to La. C.E. art. 412.2. The State recounted in its motion that Defendant had been charged in the instant case with Aggravated Rape of a Juvenile between the dates of August 15, 1990 and February 14, 1998. The State further stated that between the dates of January 1, 1984 and January 1, 1987, while Defendant was a teenager, he performed oral sex on J.K., an eight-year-old, and attempted to have J.K. perform oral sex upon him. While conceding that the time for prosecuting Defendant for that offense had lapsed, the State argued that the acts alleged by J.K. fell “squarely within the provisions of La. C.E. art. 412.2 to show ‘[a] lustful disposition of the defendant toward children.’ ”
In the hearing on the State’s motion, defense counsel argued that the acts sought to be introduced allegedly happened while Defendant was a juvenile | ^himself, while the instant case related to alleged acts Defendant committed as an adult. Defense counsel concluded that the prejudicial impact of J.K’s testimony would outweigh the probative value.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. State v. Williams, 09-48 (La. App. 5 Cir. 10/27/09); 28 So.Bd 357, 363, writ denied, 09-2565 (La.5/7/10); 34 So.3d 860. The Louisiana Supreme Court first recognized a “lustful disposition” exception to the general rules of evidence in State v. Cupit, 189 La. 509, 179 So. 837 (1938). Williams, 28 So.3d at 364. In 2001, the legislature codified this lustful disposition exception in La. C.E. art. 412.2.
La. C.E. art. 403 provides that, “[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. State v. Wright, 11-0141 (La.12/6/11); 79 So.3d 309, 316-17. In enacting Article 412.2, “the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility.” Id. at 317. Article 412.2 was enacted to loosen restrictions on “other crimes” evidence and to allow evidence of “lustful disposition” in cases that involve sexual offenses. Id. at 318.
Thus, pursuant to La. C.E. art. 412.2, evidence of a prior sexual offense indicating that the defendant has a lustful disposition toward children is admissible | nif *558 relevant and if the probative value outweighs the prejudicial effect. Williams, 09-48 at 11; 28 So.3d at 364; State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03); 860 So.2d 207, 218.
At the trial court level, Defendant did not file a memorandum opposing the State’s Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to La. C.E. article 412.2. Furthermore, during the motion hearing, defense counsel did not raise or argue the issues of either J.K.’s reliability or the dissimilarity of the charged offense to the alleged prior offense.
In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La.C.Cr.P. art. 841(A). Both this Court and the Louisiana Supreme Court have recognized that a new basis for an objection may not be raised for the first time on appeal. State v. Cooks, 97-0999 (La.9/9/98); 720 So.2d 637, 644, cert, denied, 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); State v. Burdgess, 434 So.2d 1062, 1067 (La.1983); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 77, writ denied, 98-0264 (La.6/19/98); 719 So.2d 481.
Accordingly, we pretermit the analysis of J.K.’s reliability or the dissimilarity of the charged offense to the alleged prior offense because they were not first presented to the trial court for consideration. We will now address Defendant’s remaining issues.
Defendant argues that his status as a minor at the time of the alleged offense against J.K. should have precluded J.K’s testimony, and that the testimony was unfairly prejudicial. It is noted that the Louisiana Supreme Court considered a similar issues in State v. George, 11-0325 (La.2/23/11); 55 So.3d 788. In that case, the trial court ruled that the defendant’s prior unadjudicated act of attempted 112forcible rape committed when he was 15 years of age would be highly probative in the defendant’s trial of forcible rape by revealing the defendant’s modus operandi and lustful disposition. The trial court held the introduction of the evidence would be barred because of its prejudicial nature.
In reversing the trial court’s ruling, the supreme court held specifically that, “The introduction of evidence of unadjudicated juvenile offenses is allowed under both C.E. arts. 404(B) and 412.2. Whether the introduction of such offenses is allowed, however, is controlled by C.E. art. 403.” Id. The court concluded,
Article 403, though, does not allow for the exclusion of relevant evidence if its probative value is equal to its prejudice. Instead, the evidence of defendant’s pri- or unadjudicated act of forcible rape should have been ruled inadmissible only if “its probative value is substantially outweighed by the danger of unfair prejudice.” Id. [Emphasis in original].
In addressing the defense counsel in the instant matter, the trial court stated the following during the State’s motion:
Had [defendant] been charged with this offense, this would not be allowed in— into Court. But he wasn’t. It’s merely — it’s merely [J.K.] coming into court, subject to your cross examination, as to whether or not it happened, why he didn’t report it, and all the other things that happen in a trial; and the jury can consider whether or not they believe that this act actually happened, and decide whether or not it shows his predisposition towards children ...
Based on the argument presented to the Court, the Court finds that the evidence passes the balancing test of Code of *559 Evidence Article 403, and finds that it’s probative, and its probative value outweighs any prejudicial effect.
Here, following the same reasoning set forth in George, supra, the trial court concluded that J.K.’s testimony, while possibly prejudicial, was highly probative to the extent that the jury could determine whether Defendant had a sexual predisposition toward children. The court also noted that J.K.’s testimony would be subject to cross-examination by Defendant, thereby allowing the jury to make its own determination about the weight and credibility of the testimony.
| laWith respect to Defendant’s argument that J.K.’s testimony somehow confused the jury, the record reflects that the jury was charged by the trial court with the following instruction before deliberation:
THE COURT:
Code of Evidence Article 412.2 is evidence of similar crimes, wrongs, or acts in sex offense cases. When an accused is charged with a crime involving sexually assaultive behavior, or with facts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused commission of another crime, wrong, or act, involving sexually assaultive behavior, or acts which indicate a lustful disposition towards children, may be admissible and may be considered for its bearing on any matter to which it’s relevant.
Remember, Ladies and Gentlemen, the accused is on trial only for the offenses charged. You may not find him guilty of this offense merely because he may have committed another offense.
[Emphasis added].
A reading of the jury charge makes it clear that the jury was not to assume Defendant was guilty of the aggravated rape of J.L. because of J.K’s testimony.
Based on the record, we do not find the trial court erred in admitting J.K’s testimony. Defendant was charged with the aggravated rape of a child, J.L., and the victim also alleged that Defendant forced her to perform oral sex upon him numerous times. The testimony of J.K. that Defendant asked him to perform oral sex upon him while J.K. was of a very young age was highly relevant to show Defendant’s lustful disposition towards young children. The similarities are sufficiently probative to support admissibility of evidence under La. C.E. art. 412.2. Accordingly, we affirm the trial court’s ruling on this issue.

Parole Eligibility

Defendant alleges the record does not demonstrate whether the jury found he had committed the aggravated rape of J.L. before or after his 18th birthday, which would determine his parole eligibility. Defendant further argues that this Court should apply the rule of lenity and assume that he was under the age of eighteen at 114the time of the rape of which he stands convicted. Finally, citing the U.S. Supreme Court case of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), Defendant concludes that in light of his assertions, the trial court erred in sentencing him to life at hard labor without the benefit of parole.
We first note Defendant did not file a motion for reconsideration of sentence with the trial court. La.C.Cr.P. art. 881.1(E) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from *560 urging any ground not raised in the motion on appeal or review.
At the time of sentencing, defense counsel merely stated by way objection, ‘Tour Honor, as you’ve stated, this sentence is mandated by the Legislature, but in order to protect Mr. Kiger, we respectfully object to the sentence; and for the record, I will be filing an appeal on his behalf today.”
Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, merely limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hills, 03-716 (LaApp. 5 Cir. 12/9/03); 866 So.2d 278, 286, writ denied, 04-1322 (La.4/22/05); 899 So.2d 569; State v. Fairley, 02-168 (LaApp. 5 Cir. 6/26/02); 822 So.2d 812, 814.
 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La.1/14/03); 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the 11fiharm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (LaApp. 5 Cir. 9/28/04); 885 So.2d 618, 622.
In Graham, supra, the United States Supreme Court held:
The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life, it must provide him or her with some realistic opportunity to obtain release before the end of that term.
Here, Defendant was charged with aggravated rape of J.L. that occurred on or between August 15, 1990 and February 14, 1993. Evidence was submitted during the trial that Defendant raped J.L. multiple times during that time period. Defendant was born on June 3, 1973; thus, he turned 18 years old on June 3, 1991. While Defendant may have been 17 years old when the sexual abuse of J.L. began, his crime was repetitive and continuing in nature into his adulthood. In returning a guilty verdict, the jury inherently found Defendant committed the aggravated rape of J.L. while being an adult. Consequently, despite Defendant’s contention, we do not find that Graham’s juvenile offender law applies to his sentence.
The sentence for the crime of aggravated rape at the time the offense was committed was a mandatory life sentence without benefits. La. R.S. 14:42. The Louisiana Supreme Court has previously held that a mandatory life sentence for aggravated rape is a valid exercise of the state legislature’s prerogative to determine the length of sentence for crimes classified as felonies. State v. Fama, 412 So.2d 577 (La.1982); State v. Prestridge, 399 So.2d 564 (La.1981). The mandatory life sentence for aggravated rape is a not a violation of the prohibition against excessive punishment. See, State v. Talbert, 416 So.2d 97, 102 (La.1982) and State v. Lewis, 98-672 (LaApp. 5 Cir. 3/10/99); 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00); 760 So.2d 334. Defendant did not urge a downward 11fideviation at the time of sentencing. Defendant has not shown any exceptional circumstances to justify a downward departure from the mandatory life sentence. Additionally, he has failed to carry his burden of proof that his life *561 sentence for aggravated rape is unconstitutionally excessive.
Accordingly, we affirm Defendant’s sentence.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
The record does not reflect that Defendant was notified of Louisiana’s sex offender registration requirements in accordance with La. R.S. 15:541, et seq.
The offense for which Defendant was convicted is designated as a sex offense by La. R.S. 15:541(14.1). La. R.S. 15:542 outlines mandatory registration requirements for those categorized as sex offenders and child predators under La. R.S. 14:541(14.1). Additionally, La. R.S. 15:542.1 sets out notification requirements for those offenders categorized as sex offenders and child predators. La. R.S. 15:543A requires the trial court to provide written notice to all sex offenders and child predators of the aforementioned registration and notification requirements.[5]
This Court has held that the failure to properly inform a defendant of sex offender registration requirements warrants a remand for written notification. This Court generally remands with an order that the trial judge inform the defendant of the registration requirements as provided in La. R.S. 15:543A, by sending appropriate written notice to the defendant within ten days of this Court’s opinion, 117and by filing written proof in the record that defendant received such notice. See State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01); 778 So.2d 1165,166-67.
Considering the mandatory language of La. R.S. 15:543A and the fact that this Court has previously remanded matters for notification of sex offender registration requirements, even where the defendant was serving a life sentence,[6] we remand to the trial court with an order that Defendant be informed in writing of both his sex offender registration requirements and his notification requirements.
DECREE
For the foregoing reasons, we affirm the conviction and sentence of Jason M. Kiger. Additionally, we remand the matter to the trial court to provide Defendant with the notification of the sex offender registration requirements.

SENTENCE AND CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS

.The record does not show that the trial court ruled on the remainder of Defendant's omnibus motions prior to trial. This court has held that "motions pending at commencement of trial are waived if defendant proceeds at trial without raising as an issue the fact that the motions were not ruled upon.” State v. Scamardo, 97-197 (La.App. 5 Cir. 2/11/98); 708 So.2d 1126, 1129, writ denied, 98-0672 (La.7/2/98); 724 So.2d 204.

. The victim’s initials, and those of certain family members, are used under the authority of La. R.S. 46:1844(W)(3), which allows the Court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials.

. J.L. clarified that the frequency with which Defendant forced her to perform oral sex "depended on the circumstances,” varying from more than once a week to a month.

. At trial, K.M., Defendant's sister-in-law, testified that she is close with J.L. On May 31, 2011, K.M. and J.L. were having a conversation during which K.M. commented that she was uncomfortable that Defendant was taking showers with her three-year-old niece, J.M. At that time, J.L. reacted by taking her cell phone and running down the hallway.

. Prior to January 1, 2008, the notice requirement for child predators was contained in La. R.S. 15:542.1C, and the notice requirement for sex offenders was found in La. R.S. 15:543A.

. State v. Arabie, 07-806 (La.App. 5 Cir. 3/11/08); 982 So.2d 136, writ denied, 08-928 (La. 11/21/08); 996 So.2d 1104.