864 So.2d 654 (2003)
STATE of Louisiana
v.
Jean P. LEE.
No. 03-KA-901.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 2003.
*656 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Martin Bellanger, Assistant District Attorneys, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant Jean P. Lee appeals his conviction of attempted possession of cocaine, a violation of La. R.S. 40:967(C). We affirm.
Lee was charged with possession of cocaine by a bill of information, along with Winston Bartholomew. The present appeal pertains solely to Lee.
At trial, Deputy Chad Peterson of the Kenner Police Department testified that on August 4, 2002, at approximately 5:00 a.m., he was on patrol alone in his marked police unit when he observed a vehicle traveling westbound on West Esplanade in Jefferson Parish. He noticed that the driver, later identified as Mr. Bartholomew, and the passenger, later identified as Lee, were not wearing their seatbelts. Deputy Peterson initiated a traffic stop utilizing his overhead emergency lights and his audible siren. He also used his take-down lights, which he explained were two spotlights that illuminated the back of the vehicle.
The vehicle proceeded westbound on West Esplanade for approximately four or five blocks, made a right turn onto California Street, and pulled into a driveway where it came to a complete stop. Deputy Peterson testified that he could see clearly into the vehicle. When the officer activated his lights, he observed both subjects acting in a nervous manner. He explained that it looked like Lee was bending over toward the floor. Deputy Peterson testified that he was "shocked," because they were acting in a nervous manner and did not stop immediately, and thought that perhaps he was dealing with a stolen vehicle or persons who were wanted.
Once they pulled into the driveway, Deputy Peterson immediately exited his police unit and approached the driver's side of the other vehicle. He never saw *657 the driver reach over the center console into the passenger seat, or throw anything towards the passenger. The driver then exited the vehicle and ran toward Deputy Peterson. As the driver exited the vehicle, the deputy saw him discard one plastic baggie containing a white powdery substance, later identified as cocaine, onto the driver's seat. Deputy Peterson explained that, as soon as the driver exited the vehicle, he just opened his hand and the baggie fell right onto the driver's seat.
Deputy Peterson immediately handcuffed the driver and placed him in the back of the police unit. The officer subsequently retrieved the bag of cocaine from the driver's seat, then proceeded to the passenger side. Lee acted in a nervous manner "and throwing something." He placed his hands toward his waistband, "just making nervous movements." At the deputy's request, he exited the vehicle.
At that point, Deputy Peterson looked in the immediate area and saw another bag of cocaine, right underneath the bottom of the passenger seat, partially sticking out. Lee was handcuffed and the package was retrieved. Sergeant Miley arrived to assist Deputy Peterson. Peterson informed Sergeant Miley about what had occurred, and Miley chemically field-tested the white powdery substance in both baggies.
Deputy Peterson identified Lee in court as the individual who was in the passenger seat. He identified State's Exhibit 2 as the baggie he retrieved from the driver's seat. The officer further identified State's Exhibit 3 as the smaller baggie that he found underneath the passenger seat. The defense stipulated that the lab report was prepared by the Jefferson Parish Crime Lab, that it pertained to the two samples recovered in this case, and that the samples, State's Exhibits 2 and 3, were examined by the lab and found to be cocaine. Deputy Peterson described the center console in the vehicle as being high off the floorboard with a middle open box. The officer was convinced that he never saw the driver throw anything into the passenger seat.
Lee testified that, at the time of this incident, he lived at 3500 California, and that Mr. Bartholomew lived across the street at 3501 California. At approximately 4:20 a.m., Lee, who had just gotten home from a barbecue in Baton Rouge, went and talked to Mr. Bartholomew, who was sitting on his porch. Lee asked Mr. Bartholomew to bring him to the store so he could get a beer. Mr. Bartholomew told Lee that he would, but that he had to make a stop along the way to pick up some money. Lee surmised that when Mr. Bartholomew made the stop, he picked up the drugs.
Lee testified that Mr. Bartholomew stopped at his friend's house, and then took him to the Sav-a-Center on David Drive. The store did not have the kind of beer he wanted, and Mr. Bartholomew was bringing him home when they got pulled over. Lee testified that Mr. Bartholomew moved away after they got out of jail, and that Mr. Bartholomew had told him he was "going to take his charge," because everything in the car was his.
Lee explained that he had not seen Mr. Bartholomew since he had come to court in August and pled not guilty, and that he did not know where Mr. Bartholomew was at the time of trial. He testified that it took five or ten minutes for them to go to the friend's house, to the store, and home, and that Mr. Bartholomew was inside his friend's house for approximately three minutes. Lee said that, when Mr. Bartholomew got out of the car after they were pulled over, Mr. Bartholomew threw a baggie into the car. Lee did not see a second baggie. Lee stated that he did not see anything under his seat, and that he *658 did not bend over and look under the seat. He testified that he did not know that there was anything under his seat, and he did not have any knowledge that there were drugs of any kind in the vehicle at the time.
After hearing the testimony, the jury found Lee guilty of the responsive verdict of attempted possession of cocaine.
On appeal, Lee argues that the evidence was legally insufficient to support the verdict. He contends that the only evidence against him was his mere presence in the area where the drugs were found. He further argues that most of the factors used to determine whether a defendant exercised dominion and control sufficient to constitute constructive possession were not met in his case, and urges there was no showing that the drugs were in an area in [his] plain view. He avers that there was no proof to suggest that either he or Mr. Bartholomew were drug users, that there was no information concerning any police tip, and there was no evidence to suggest that he and Mr. Bartholomew had an illicit criminal partnership. Lee also argues that Deputy Peterson's testimony at trial was not credible because he testified at the hearing on the motion to suppress, but then changed his testimony at trial in order to ensure that Lee was convicted.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[1]
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[2] When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[3] The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia.[4] This is not a separate test from Jackson, but it is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond *659 a reasonable doubt.[5]
In the present case, Lee was convicted of the responsive verdict of attempted possession of cocaine, violations of LSA-R.S. 40:967(C) and R.S. 14:27. According to LSA-R.S. 40:967(C), it is unlawful for any person knowingly or intentionally to possess cocaine. An attempt is defined in LSA-R.S. 14:27, which provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
....
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
To prove an attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine. Specific criminal intent exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.[6] The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial.[7]
The mere presence of the defendant in the area where a controlled dangerous substance is found is insufficient to constitute constructive possession.[8] However, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence.[9]
The element of possession includes both "actual" and "constructive" possession.[10] A person who is not in physical possession of drugs may have constructive possession when the drugs are under that person's dominion and control.[11] Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances.[12]
This court has recognized that several factors may be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with the person found to *660 be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of paraphernalia, and evidence that the area was frequented by drug users.[13]
In the instant case, the record reflects that Deputy Peterson saw Lee, who was seated in the passenger seat, bend over toward the floor as he activated his lights to make the stop. Lee and the driver were both acting nervously during the stop. Deputy Peterson observed Lee throw one plastic baggie containing a white powdery substance, later identified as cocaine, onto the driver's seat after he exited the vehicle. He was able to plainly observe that Bartholomew did not reach over or throw anything onto the passenger seat. Deputy Peterson testified that he could see clearly into the vehicle.
As Lee exited the vehicle, Deputy Peterson observed "another bag of cocaine" underneath the bottom of the passenger seat partially sticking out. The center console in the vehicle separating the driver and the passenger was high, according to Deputy Peterson, which indicates that it would have been difficult for the driver to throw a baggie and have it reach the floor of the passenger side. Additionally, Lee confirmed during his testimony that the driver only threw one baggie into the vehicle. Obviously, there was more evidence against Lee other than his "mere presence" in the area where the drugs were found.
Lee argues that the evidence was insufficient to support the conviction, because most of the factors used to determine whether he exercised dominion and control to constitute constructive possession were not met. It is not necessary to prove that each and every factor was present, and further, our review shows that several of the factors were met: Lee knew the driver, as he lived across the street from him, and Lee had access to the area where the drugs were found. These facts, along with the evidence discussed above, show that Lee exercised sufficient dominion and control so as to constitute constructive possession of the cocaine.
Lee also contends that Deputy Peterson's testimony at trial was not credible, because he testified at the hearing on the motion to suppress, but then changed his testimony at trial in order to ensure that defendant was convicted.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. The credibility of witnesses will not be reweighed on appeal.[14] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings.[15]
The record reflects that Deputy Peterson and Lee presented conflicting testimony at trial regarding the events surrounding the incident. Apparently, the jury found Deputy Peterson more credible than *661 Lee and rejected Lee's testimony that he did not know that there was anything underneath where he was seated, and that he did not have any knowledge that there was any kind of drugs in the vehicle at the time. Further, there was no internal contradiction within Deputy Peterson's testimony, nor did it conflict with any physical evidence.
Lee points out that, at the suppression hearing, Deputy Peterson did not know if the driver threw one or two baggies into the vehicle, but that at trial, Deputy Peterson was certain that he only threw one baggie. Lee fails to note that in his own testimony, he stated that he only saw one baggie. Lee also points out that at trial Deputy Peterson testified that the driver and Lee were acting nervously, but that at the suppression hearing, Deputy Peterson said nothing about such behavior. We find no inconsistency between the testimonies, but rather observe that Deputy Peterson added more facts and observations at trial.
Based on the foregoing, we find there was sufficient evidence to support a conviction. This assignment of error has no merit.
The record was reviewed for errors patent according to LSA-C.Cr.P. art. 920.[16] In so doing, we note that the trial court failed to advise Lee of the prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. We remand the case with an order to the trial judge to send to Lee, within ten days of the rendering of this opinion, written notice of the prescriptive period for post-conviction relief, and then to file written proof in the record that the Lee received the notice.[17]
CONVICTION AFFIRMED. CASE REMANDED FOR NOTICE OF POST-CONVICTION PRESCRIPTIVE PERIOD.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Ortiz, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
[2] State v. Williams, supra.
[3] State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Qutoum, 02-780, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 323, 326, writ denied, 03-595 (La.5/30/03), 845 So.2d 1059.
[4] State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78.
[5] State v. Wright, 445 So.2d 1198 (La. 1984); State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224.
[6] State v. Chattman, 01-556 (La.App. 5 Cir. 10/30/01), 800 So.2d 1043, 1048, writ denied, 01-3320 (La. 12/19/02), 833 So.2d 332.
[7] State v. Council, XXXX-XXXX (La.App. 4 Cir. 11/28/01), 802 So.2d 970.
[8] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[9] Id.
[10] State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1331.
[11] State v. Williams, supra.
[12] State v. Riley, 587 So.2d 130, 133 (La.App. 2 Cir.1991).
[13] State v. Williams, supra.
[14] State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, (writs denied), 99-3477 (La.6/30/00), 765 So.2d 1062 and 2000-150 (La.6/30/00), 765 So.2d 1066
[15] State v. Rivers, 01-1251, pp. 6-7 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La. 11/22/02), 829 So.2d 1035.
[16] Also see State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
[17] See, State v. Pierre, 02-838 (La.App. 5 Cir. 12/30/02), 834 So.2d 1229, 1233.