909 So.2d 1007 (2005)
STATE of Louisiana
v.
Benjamin CLARK.
No. 05-KA-61.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2005.
*1009 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Gevin Grisbaum, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Benjamin Clark, appeals his conviction and sentence for possession with intent to distribute cocaine. For the following reasons, we affirm and further remand in order to correct an error patent on the face of the record.
On October 1, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Benjamin Clark, with possession with intent to distribute cocaine. Clark was arraigned on November 13, 2002, and pled not guilty.
Clark filed various pre-trial motions, including a Motion to Suppress Evidence, and a Motion to Reveal the Identity of the Confidential Informant. The trial court heard and denied the suppression motion on March 18, 2003. On May 20, 2003, the trial court heard and denied the Motion to Reveal the Identity of the Confidential Informant.
On February 11, 2004, Clark testified, under oath, that he had discussed his right to a jury trial with his attorney, and that he wished to waive that right and be tried by the judge. The court held a bench trial that day, and found Clark guilty as charged.
On May 11, 2004, the trial court sentenced Clark to twenty-five years at hard labor, without benefit of parole, probation, or suspension of sentence for the first two years. Clark made an oral motion for appeal. The State filed a habitual offender bill of information that day, alleging Clark to be a third felony offender, but later withdrew the habitual offender bill on June 15, 2004.
Detective Scott Zemlik of the Gretna Police Department testified that a confidential informant ("C.I.") advised him a subject known as "Shorty" was selling crack cocaine at 1938 O'Connor, Apartment 7. On September 9, 2002, Zemlik supplied the C.I. with twenty dollars and sent him to the O'Connor Street residence to attempt a narcotics purchase. Zemlik first searched the C.I. and determined that he did not possess any contraband. From *1010 a concealed vantage point, Zemlik saw the C.I. engage in a hand-to-hand transaction with an individual at the front door of the house. Zemlik was assisted by Sergeant Claude Koenig. Koenig testified that he could not see the person with whom the C.I. was dealing.
When the C.I. returned to Zemlik, he had one off-white rock. Koenig testified that the C.I. identified the seller as "Shorty."[1] Based on the controlled purchase, Zemlik applied for, and obtained, a search warrant for the O'Connor Street apartment. Zemlik and other narcotics officers executed the warrant at about 5:10 a.m. on September 12, 2002.
Zemlik testified that he and other officers forced open the locked gate at the front door of the apartment. They then used a battering ram to open the locked door. The officers entered the house shouting, "Police, search warrant." They found defendant, Benjamin Clark, in bed with a Ms. Fagan. He was not clothed. They secured Clark and Fagan, and handcuffed Clark. Clark asked the officers if he could get dressed. According to Zemlik, Clark directed the officers to a dresser drawer. Detective Wayne Williams reached into the drawer and pulled out a pair of shorts. A film canister fell from the shorts and onto the floor.
Zemlik picked up the canister and found it contained forty-three off-white rocks, later determined to be crack cocaine.[2] Clark was allowed to dress, and he and Ms. Fagan were taken into the front room of the apartment, where they were supervised by Sergeant Koenig. Zemlik testified that he continued the search. He located an energy bill addressed to Clark at the apartment. He also recovered a set of two-way personal radios, a plate with off-white residue, and some plastic bags containing off-white residue. Koenig testified that, based on his law enforcement experience, he considered the quantity of rocks found at the apartment to be greater than what a person would keep for personal use.
Zemlik advised Clark of his Miranda rights. Clark then told Zemlik that Ms. Fagan had nothing to do with the cocaine, and asked him to let her stay at the apartment. Zemlik testified that, to his knowledge, no one was living at the apartment except Clark.
Detective Williams testified that Clark asked for some underwear, but that he did not ask for any particular shorts. Williams simply went to the dresser and pulled out a pair of shorts at random. Williams testified that when he pulled the shorts out of the drawer, the canister containing cocaine fell out of them. Williams watched Zemlik open the canister, and he saw the rocks of crack cocaine. Zemlik testified that, to his knowledge, Clark was the only person living in the apartment at that time.
Ann White, a defense witness, testified that she is a substance abuse counselor who had met Clark in connection with her work at Bridge House in New Orleans. Ms. White testified that she routinely accompanies some of her clients and former clients to Narcotics Anonymous and Alcoholics Anonymous meetings. On September 9, 2002, she picked up Clark at his home at 6:30 p.m. and took him to a meeting which lasted from 7:00 p.m. to 9:00 p.m. She then took him home sometime between 9:30 p.m. and 10:00 p.m. Ms. *1011 White identified Defense Exhibit 2 as a two-year sobriety chip Clark received at that night's meeting.
In his trial testimony, Clark reiterated Ms. White's assertion that he was at a Narcotics Anonymous meeting on the night of September 9, 2002 and, thus, could not have sold narcotics to the C.I. It was Clark's contention that the officers targeted him for arrest because he had filed a complaint against Zemlik with the police department's Internal Affairs Division.
Clark testified that he was not advised of his rights at his apartment, but at the police station. He further testified that he did not waive his rights.
In his first assignment of error, Clark contends that the evidence at trial was insufficient to support his conviction for possession of cocaine with intent to distribute. He argues that the police officers' testimony was conflicting and unreliable. The officers' credibility was questionable, Clark says, because it was colored by the fact that he filed an Internal Affairs complaint against Detective Zemlik shortly before his arrest. Clark further argues that the State failed to link him to the cocaine found in his bedroom in a dresser drawer.
When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.[3] Accordingly, Clark's second assignment of error is addressed first.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia,[4] requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[5] When circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[6] When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.[7]
To prove possession with intent to distribute cocaine, the State must show the Clark knowingly or intentionally possessed the drug and that he did so with the *1012 specific intent to distribute it.[8] Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[9] Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused.[10]
Clark testified at trial that his Internal Affairs complaint against Zemlik sprang from an incident that occurred sometime between July 9 and 12, 2002. He was driving with his friend, Lorraine Martin, in his vehicle, and Zemlik and Koenig purposely followed him too closely in an unmarked truck. According to Clark, he had to drive through a red light to escape a rear-end collision. Clark testified that the officers pulled him over for the traffic offense. They took him from his vehicle at gunpoint and began searching it. They took Ms. Martin to a nearby ambulance and had a female police officer strip search her. When Clark asked one of the officers for his name, the officer responded that Clark would regret having asked him. The officer then took him into the ambulance and strip searched him. The officers did not find any contraband during the stop.
Clark testified that he did not file a complaint with the police department immediately after the incident, because he did not know the officers' names. He testified that, three to four days following the traffic stop, the same officers arrived at his apartment and threatened to shoot him if he did not open the door. He allowed them inside, and they threw him to the ground and began searching the apartment. Ms. Martin was at the apartment with her infant granddaughter. The officers found the child's medication and tested it to determine if it was contraband. They then threw it into a trashcan. Clark said that the officers forced him to sign a consent to search form against his will. Following that incident, Clark learned the officers' names were Zemlik and Koenig, and he filed the complaint against them.
Clark testified that when the officers arrived at his apartment on September 12, 2002 to execute the search warrant, he heard them kick in the door. He was in the bedroom with Robin Fagan. One of the officers took him into the bathroom and handcuffed him. Clark testified that he asked for something to wear, and an officer gave him a pair of sweatpants. He did not see anyone take a pair of shorts from a drawer, nor did he see any cocaine. He did not know the source of the cocaine the officers recovered. Clark testified that Koenig told him, "`Oh, you thought because, you thought because you went to f* * *ing Internal Affairs we wasn't coming; huh?'"
Lorraine Martin testified that she was with Clark at the time of the July 2002 traffic incident. She said that Zemlik pulled them over and the officers pulled out guns. She was strip searched in an ambulance. Zemlik used obscene language with them, and accused them of having "dope." Martin testified she was also present when the officers entered Clark's apartment and threw away her granddaughter's medication.
Robin Fagan testified that she was with Clark in his apartment when police arrived *1013 to execute the search warrant. She said she did not see the drugs in the canister. She further testified that she heard the officers talking among themselves about Clark putting a claim on them.
Zemlik testified that he had two encounters with Clark prior to the undercover purchase. But his description of those encounters differed from Clark's. Zemlik denied having stopped Clark and Martin for a traffic violation, causing them to be strip searched. Zemlik testified that he once made an arrest at a crack house, and that the suspect in that incident said he had purchased his cocaine from "Shorty." Zemlik had the suspect telephone Shorty and order some crack cocaine.
Shorty soon arrived at the house, and Zemlik noted that Shorty was Benjamin Clark. On that occasion, Clark was accompanied by Lorraine Martin. Zemlik performed a traffic stop on Clark, and found no cocaine. He testified that Martin was searched by a female officer inside of an ambulance.
Zemlik described a second encounter with Clark prior to September 12, 2002. He said he received a complaint that Benjamin Clark, a/k/a Shorty, was selling crack out of 1938 O'Connor, Apartment 7. He participated in a surveillance of that address. After seeing a hand-to-hand transaction occur at that apartment, Zemlik and other officers knocked on the door. Clark signed a "consent to search" form. The officers searched the house that night, but found no contraband. Zemlik testified that he was not aware of Clark's complaint against him until the court proceedings in the instant case.
It was Koenig's testimony that he was not involved in the traffic stop described by Clark. He testified that, while he is aware of Clark's Internal Affairs complaint against Zemlik, he does not recall whether he knew about it when he helped to execute the search warrant.
The officers' testimony, if believed, showed that their actions were not driven by Clark's Internal Affairs complaint; that the officers did not know of the complaint until after Clark's arrest. Clark argues that his version of events was more credible than the officers' testimony. The trial court clearly chose to believe the officers' testimony. When the trier of fact is confronted with conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[11] It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.[12]
Clark further urges that the officers were not consistent with each other in their testimony and were, therefore, unreliable witnesses. Clark asserts that, while Zemlik testified that he (Clark) asked Williams for a specific pair of shorts, Williams testified that he simply went to the dresser and pulled out a pair of shorts for Clark without having been asked to do so. Clark mischaracterizes the testimony. Zemlik actually testified that Clark directed Williams to a particular drawer, not to a particular pair of shorts. Williams testified that Clark asked him for some underwear and that he opened a dresser drawer and took out a pair of underwear. The officers' testimony was not contradictory.
Clark asserts that the officers' testimony was inconsistent with regard to what he was wearing when he was transported to the jail. Williams testified that Clark was wearing jeans or pants over the underwear *1014 when he was taken to jail.[13] He did not recall whether the pants were sweatpants. Zemlik testified that Clark was allowed to put on a shirt and shoes before leaving the apartment. He did not recall what else Clark was wearing. Although the officers' memories of what Clark was wearing were, to some extent, incomplete, their testimony was not contradictory.
Clark points out that the officers' testimony differs with regard to the manner in which they entered the apartment. Zemlik testified that they used a battering ram to open the door, and Williams testified that no battering ram was used. The testimony was not entirely contradictory, since Williams then said he did not recall how entry was attained. In any case, the discrepancy was minor, considering that the officers' testimony was consistent as to the more significant points.
Clark asserts that the State failed to prove the element of possession. Possession of contraband may be actual or constructive.[14] A person who is not in physical possession of drugs may have constructive possession when the drugs are under that person's dominion and control.[15] Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances.[16]
Several factors are considered in determining whether a defendant exercised dominion and control sufficient to constitute possession of illegal drugs: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users.[17]
In the instant case, the cocaine was found in a dresser drawer containing Clark's clothing, in Clark's bedroom. Clark testified that he was the only person living in the apartment, and that no one else kept their clothing there. Clark clearly had dominion and control over the cocaine. Based on the foregoing, we find that the evidence at trial supports defendant's conviction.
In his first assignment of error, Clark complains that the trial court deprived him of his right of confrontation in denying his motion to release the identity of the confidential informant used by police, and in barring him from questioning Detective Zemlik about a brutality charge for which he was allegedly fired from a previous position. While Clark describes his allegations in detail, he does not cite law to support his contention.
Clark asserts that disclosure of the informant's identity was essential to a determination of his guilt or innocence, because the informant was the only person who could identify him as the person who sold crack cocaine at 1938 O'Connor on September 9, 2002. As a general rule, an informant's identity is privileged information.[18] This privilege is founded upon public *1015 policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity.[19] Therefore, the identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information.[20]
The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant.[21] The trial court is afforded great discretion in making this determination.[22]
When an informant has played a crucial role in the criminal transaction, and when his or her testimony is necessary to insure a fair trial, disclosure of the informant's identity should be ordered.[23] Conversely, when an informant only supplies information, and does not participate in the transaction, disclosure is not warranted.[24]
Clark filed a pretrial Motion to Reveal the Identity of the Confidential Informant on April 29, 2003. The motion was heard on May 20, 2003. Clark called Ann White, who testified that she had worked as a substance abuse counselor at Bridge House in New Orleans. In that capacity, she accompanied Clark to a meeting there on the night of September 9, 2002. She picked him up at his apartment between 6:30 p.m. and 7:00 p.m. The meeting ended at 9:00 p.m., and she brought Clark home between 9:30 p.m. and 9:45 p.m. She recalled the events of that evening because she had marked it on her calendar. On that night Clark received his two-year sobriety chip.
Detective Zemlik testified that he received information from a C.I. that led him to set up a controlled drug buy at 1938 O'Connor Street, Apartment 7. Zemlik saw the C.I. go to that address and participate in a hand-to-hand exchange with the person who answered the door. The C.I. reported to Zemlik that he had purchased crack cocaine from someone called Shorty. Based on two prior investigations, Zemlik knew Shorty to be Benjamin Clark.
Zemlik testified that he applied for and obtained a search warrant for the O'Connor Street apartment. Probable cause for the warrant was based on the C.I.'s controlled drug purchase at that address. The officer testified that the C.I. was not present on September 12, 2002, when the search warrant was executed.
The defense argued that the C.I. played a crucial role in the transaction that led to his arrest, and he was, therefore, entitled to know the C.I.'s identity. The State countered that the charge in this case was actually based on the evidence seized in the search of the apartment. The C.I. did not play a crucial role in the transaction that led to Clark's arrest, because he did not participate in the search. The trial court denied Clark's motion without reasons.
The trial court did not err in denying Clark's motion. The C.I.'s drug purchase supplied Zemlik with the probable cause *1016 he needed to obtain the search warrant. But the informant's participation was not integral to the transaction (i.e., the search) that uncovered the cocaine that was the basis for the instant charge.
Clark failed to show that the C.I.'s testimony was crucial to a fair trial. Even if the C.I. had testified that someone other than Clark sold him the cocaine on September 9, 2002, such testimony would have had little or no bearing on the outcome of the trial. Clark was not charged with distribution of cocaine on September 9, but with the possession of cocaine with intent to distribute on September 12, 2002.
Clark further complains that he was deprived of his right of confrontation when the trial court prevented him from questioning Zemlik about a brutality charge that purportedly led to his dismissal from a previous job. Clark hoped to use the alleged brutality charge to bolster his claim that he was a target for harassment by Zemlik. The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination.[25]
While cross-examining Zemlik at trial, defense counsel asked the officer whether he had been terminated by the Jefferson Parish Sheriff's Office eight years earlier on a brutality charge. The State objected to the question on grounds that it was irrelevant. The following exchange ensued:
THE COURT:
What's the relevance of that?
MR. EHLE [defense counsel]:
Judge, my defense is that Officer Zemlik harassed and intimidated and brutalized Lorraine Martin and Benjamin Clark. And I know for a fact that he was terminated from Jefferson Parish for brutality, and I'd like him to answer that question.
THE COURT:
Why is that relevant to this case?
MR. EHLE:
Because it corroborates what Benjamin Clark is going to testify to.
MR. GRISBAUM [prosecutor]:
I don't think so, Your Honor.
THE COURT:
I don't really think that's relevant.
MR. EHLE:
If he was terminated from Jefferson Parish for brutality, I think that's relevant to this case. I mean 
THE COURT:
Was he terminated for brutalizing Benjamin Clark?
MR. EHLE:
No ma'am, he was not.
MR. GRISBAUM:
Then it's not relevant.
THE COURT:
I don't find that to be relevant.
MR. EHLE:
Note my objection.
THE COURT:
Okay. So noted.
After a review of the record we find that the trial court did not err in its ruling. A termination of employment that allegedly took place eight years prior to the commission of the instant offense clearly had no relevance to this case. Although *1017 an accused has a constitutional right to present a defense, this does not require a trial court to admit evidence that is irrelevant.[26] Rulings on the admissibility of evidence will not be disturbed absent an abuse of discretion.[27]
Clark further argues that his twenty-five-year sentence is both constitutionally and statutorily excessive. He argues that the trial court failed to properly consider mitigating circumstances as provided under LSA-C.Cr.P. art. 894.1.
The record shows that Clark failed to file a motion to reconsider sentence. LSA-C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness.[28]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.[29] A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.[30]
Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts.[31] The trial judge has wide discretion in imposing sentences within statutory limits, and a sentence will not be set aside if it is supported by the record.[32]
At the time of sentencing, the trial judge noted that she had considered the guidelines in LSA-C.Cr.P. art. 894.1, and that she had reviewed the Pre-Sentence Investigation Report. The report, which is part of the record, shows that Clark is a fourth felony offender.[33] He has been convicted of theft over five hundred dollars, armed robbery, and possession of heroin. Clark also has an extensive arrest history. The report shows that he has been arrested twice for simple battery and once for battery on a police officer. His record also includes arrests for misdemeanor theft and some municipal offenses.
Clark admitted to abusing marijuana, crack cocaine, and alcohol, but claimed to have stopped abusing those substances in 2000. He completed the ninth grade in school. He is not married and has no *1018 children. But the trial testimony indicates that Clark assists Lorraine Martin in caring for her grandchild, who is infected with HIV.
The statutory sentencing range for possession of cocaine with intent to distribute is two to thirty years.[34] Clark's sentence is near the upper end of that range. Had Clark been found a third felony offender, however, he would have been subject to a sentencing range of twenty to sixty years.[35] Based on the foregoing, we find that the trial court did not abuse its discretion in imposing a twenty-five-year sentence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[36] and State v. Weiland.[37] The review revealed one error in this case.
The trial court erred in failing to advise Clark of the two-year prescriptive period for filing an application for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. We, therefore, remand this case with an order that the trial court provide defendant with written notice of the prescriptive period within ten days of this Court's opinion, and that written proof of said notice be placed in the record.[38]
Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed, and we further remand in order to correct an error patent on the face of the record.
AFFIRMED; REMANDED.
NOTES
[1] Zemlik testified that he knew Benjamin Clark as Shorty from two previous encounters he had had with him.
[2] At trial, the parties entered into a stipulation that the off-white rocks were crack cocaine.
[3] State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
[4] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[5] State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
[6] State v. Williams, 99-223 at p. 8, 742 So.2d at 608.
[7] State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
[8] LSA-R.S. 40:967(A); State v. Robinson, 02-1253, p. 4 (La.4/8/03), 846 So.2d 76, 80, writ denied, 03-1361 (La.11/26/03), 860 So.2d 1131.
[9] LSA-R.S. 14:10(1); State v. Mitchell, 99-3342, p. 9 (La.10/17/00), 772 So.2d 78, 82.
[10] State v. Robinson, supra.
[11] State v. Cowden, 04-707, pp. 9-10 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1083, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2.
[12] Id.
[13] Defendant testified he was wearing sweatpants when he was taken to the jail.
[14] State v. Sandifer, 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1331; State v. Lee, 03-901, p. 7 (La.App. 5 Cir. 12/9/03), 864 So.2d 654, 659.
[15] State v. Lee, supra.
[16] Id.
[17] State v. Lee, 03-901 at pp. 7-8, 864 So.2d at 659-660.
[18] State v. Broadway, 96-2659, p. 19 (La.10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
[19] Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).
[20] State v. Zapata, 97-1230, p. 7 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443.
[21] Id.; State v. Hills, 03-716, p. 5 (La.App. 5 Cir. 12/9/03), 866 So.2d 278, 282.
[22] Id.
[23] State v. Broadway, 96-2659 at p. 20, 753 So.2d at 815; State v. Zapata, 97-1230 at p. 8, 713 So.2d at 1158.
[24] State v. Zapata, supra.
[25] Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Jones, 02-267, p. 4 (La.App. 5 Cir. 7/30/02), 824 So.2d 514, 516, writ denied, 02-2518 (La.6/27/03), 847 So.2d 1254.
[26] State v. Roberts, 97-959, p. 9 (La.App. 5 Cir. 2/25/98), 708 So.2d 1199, 1203.
[27] State v. Batiste, 98-0913 (La.9/4/98), 723 So.2d 954.
[28] State v. Dupre, 03-256, p. 7 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
[29] State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)).
[30] State v. Lobato, 603 So.2d 739, 751 (La. 1992).
[31] State v. Tracy, 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213.
[32] State v. Taylor, 02-1063, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
[33] The State filed a habitual offender bill of information alleging defendant to be a third felony offender, but the bill was later withdrawn.
[34] LSA-R.S. 40:967(B)(4)(b).
[35] LSA-R.S. 15:529.1(A)(1)(b)(i).
[36] 312 So.2d 337 (La.1975).
[37] 556 So.2d 175 (La.App. 5 Cir.1990).
[38] See, State v. Pittman, 04-705, pp. 7-8 (La. App. 5 Cir. 12/28/04), 892 So.2d 641, 645-646.